[No. 19660. Department Two. March 29, 1926.]

EDWARD H. REINCKE *et al.*, *Respondents*, v. TACOMA RAILWAY & POWER COMPANY, *Appellant*.[1]

[1] MUNICIPAL CORPORATIONS (383)— STREETS — USE AS HIGHWAY — CONTRIBUTORY NEGLIGENCE. Plaintiff, driving his automobile into a truck standing in a lighted city street at night, without seeing it until ten feet away, when it could have been plainly seen for hundreds of feet, is guilty of contributory negligence, precluding a recovery, as a matter of law.

Appeal from a judgment of the superior court for Pierce county, Teats, J., entered July 1, 1925, upon the verdict of a jury rendered in favor of the plaintiffs, in an action in tort. Reversed.

*Ellis, Fletcher & Evans*, for appellant.

*P. L. Pendleton*, for respondents.

MITCHELL, J.—This action was brought to recover judgment for personal injuries suffered by Mr. Reincke and for damages to an automobile belonging to himself and wife, caused in a collision with a tower truck belonging to the defendant while being used by persons engaged in decorating overhead wires across Pacific avenue in the city of Tacoma. The issues were negligence and contributory negligence. Verdict and judgment were for the plaintiffs in the sum of $850. Defendant has appealed.

¹Reported in 244 Pac. 577.

The material and controlling facts on behalf of respondents were testified to by Mr. Reincke only, and were about as follows: Pacific avenue runs north and south. At the time of the collision appellant's truck was standing facing the north on the east side of the center of the avenue. Mr. Reincke, alone, driving his automobile northerly ten or fifteen miles an hour, ran into the rear end of the truck, situated between Fourteenth and Fifteenth streets. It happened at eleven o'clock at night. It was dark and raining. The street lights were burning, one of which was within thirty feet of the truck. There were lights in the show windows along the avenue, but none immediately opposite the truck. Respondents' automobile was equipped with good head lights and brakes. He had just driven into the city from a distance of ten or twelve miles. Within the block there was no traffic to interfere on his side of the avenue. There were some irregularly parked automobiles along the right-hand or easterly curb of the avenue. His theory was that, as he approached the truck, the red light it carried in the rear was obscured by wreaths of evergreens the decorators had carelessly allowed to fall or hang down over the rear end of the truck. He so testified, and this is the sole ground of negligence charged against the appellant. He had cleaned the windshield of his automobile of rain just before the accident. He got within ten feet of the truck before he saw it and then could not avoid the collision. More directly, his account of the manner of the happening of the accident may be shown by his own testimony, as follows:

"Q. Then you meant to say that you did see vehicles parked at the curb as you approached this truck? A. Yes. Q. Do you remember about how many? A. Might have been two or three. Q. How close to the truck? A. About ten or twelve feet between them

and the truck. Q. How close was the nearest one to the truck. A. The nearest one was just about straight across. Q. Just about opposite the truck? A. Yes. Q. The other one ahead or behind? A. A little further back."

Although he said he did not notice the cars at the curb until he got within ten feet of the truck, he further testified as follows:

"Q. Now, your lights were burning, your headlights? A. Yes. Q. Full on? A. Yes. Q. Brightly? A. Yes. Q. Could you see an object 150 feet ahead of you with your lights? A. I don't know, I couldn't on a dark night in rainy weather. Q. You couldn't in rainy weather on a dark night, could you? A. I could probably out on a road, but not where there are street lights shining, if you can see them in your wind shield. Q. So with your lights you could not see objects 150 feet ahead, could you? A. No, sir. Q. How far ahead could you see objects with your headlights? A. I don't know, I didn't measure. Q. Sir? A. I didn't measure the distance. Q. As you were driving, how far could you see? A. Out on a real dark road I could see. Q. In that place, I mean, how far could you see objects ahead? A. If I was looking real well I suppose I could see 100 feet. Q. See 100 feet? A. I know I could see a red light 100 feet. Q. I am not talking about a red light, I am talking about a vehicle. A. A vehicle the same color of the street, could not hardly see it at all. Q. Could not see it at all? A. No. Q. Then your lights don't do you much good? A. Not much. Q. Not much, but if you were just looking as an ordinary person would, how far could you see a figure with the aid of your head lights? A I don't know. Q. You haven't any idea? A. No. Q. Sir? A. I could probably measure the distance, if I tried to find out. Q. You saw a number of vehicles, didn't you, Mr. Reincke, in your ten mile trip? A. Well, I have been doing a lot of night driving, but I never had anything like that happen. Q. Yes, but I am asking about this particular car, these particular

headlights, on this particular occasion. Now you had driven from Sumner, had you not? A. Yes. Q. You saw the turns in the road all right, didn't you? A. Yes. Q. Did you see any other vehicles on the road? A. Coming toward me. Q. Only those coming toward you? Didn't see any the other way? A. There wasn't many out that night. Q. See any cars parked along the roadway? A. Not that I know of. Q. None at all? A. Not on the right. Q. Nowhere, leaving Sumner, and the place of this accident? A. Seen a lot of them parked on Pacific avenue. Q. Is that the only place? A. It's all I remember. Q. All you remember? Could you see 50 feet looking in an ordinary manner. Could you see 50 feet ahead an unlighted vehicle? A. Might if I was looking for it. Q. I am not saying, 'if you were looking for it,' just as you would ordinarily look driving the car. A. I might, if I was looking for it. Q. Were you looking ahead of you on this occasion? A. Sure I was. Q. Then you could have seen an unlighted vehicle 50 feet ahead, could you not, sir? A. I didn't get your last question. Q. I say, then you were looking ahead and could have seen a vehicle, an unlighted vehicle, with the aid of your headlights? A. Yes, I could see it all right. Q. Yes. And at this place along Pacific avenue? A. On account of the dark street, not there. It is not supposed to be left in the middle of the street, anyhow I wouldn't leave mine in the middle of the street. Q. That may be true about what you might do, but I am asking you if you could, with the aid of your headlights, as you were looking ahead, see an unlighted vehicle fifty feet? A. If you wasn't looking for it you couldn't. Q. What do you look for when you are looking ahead? A. You are looking for certain things, people crossing or cutting in on you. Q. If there had been a man standing ahead of you where the truck was, could you have seen him with your headlights fifty feet? A. I probably could. Q. Were you looking ahead as you approached that truck? A. Sure, yes. Q. Were you looking ahead when fifty feet from that truck? A. Fifty feet? I was watching there, yes. Q. Were you looking ahead when

forty feet away? A. Yes. Q. Looking ahead then from the time you were fifty feet until you collided with the truck? A. Yes. Q. Were you looking ahead prior to the time you were fifty feet from that truck? A. Not all the time. Q. Were you looking ahead from 150 feet up until the time you collided with that truck? A. I think I was. Q. And continuously up until the time you collided with the truck? A. Could not say I was watching the road straight along. Q. Was there anything to attract your attention? A. You generally look off to the side once in a while anyhow. Q. Did you see any people on the sidewalk? A. Yes, sir. Q. Right near this truck? A. Yes, sir.''

[1] This testimony was in no way changed as to its legal effect by that given on behalf of the appellant, whose witnesses, and there was a large number of them, testified that two red lights on the rear end of the truck were plainly visible at all times before, at and after the collision, and that at that time the truck could be seen from the rear plainly from a distance of hundreds of feet.

It follows, we think, upon this record that there can be no serious question but that respondents' own negligence contributed proximately to the injuries suffered by them, and that it must be held as a matter of law, upon a consideration of all the evidence and all reasonable inferences to be drawn from it, that the respondents are not entitled to recover, and that appellant's motion for a directed verdict and for judgment notwithstanding the verdict, made in the trial court, should have prevailed.

Reversed with directions to enter judgment in favor of the appellant.

TOLMAN, C. J., MAIN, MACKINTOSH, and PARKER, JJ., concur.