[No. 27685. Department Two. December 4, 1939.]

ARTHUR G. TRUDEAU *et al., Respondents*, v. SNOHOMISH AUTO FREIGHT COMPANY *et al., Appellants.*

GEORGE KUMPE, *Respondent*, v. SNOHOMISH AUTO FREIGHT COMPANY *et al., Appellants.*[1]

[1]Reported in 96 P. (2d) 599.

*Shank, Belt, Rode & Cook,* for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for respondents.

BEALS, J.—Elliott avenue west, in the city of Seattle, runs near and, generally speaking, parallel to the Seattle water front, and in a northerly and southerly direction. The street is paved with concrete, and is fifty-six feet in width from curb to curb, carrying double street car tracks in the center.

Shortly after midnight on the morning of December 16, 1937, a semi-trailer truck, owned and operated by defendant Snohomish Auto Freight Co., Inc., a corporation, being driven by defendant Charles Schacht-

schneider, its employee, was proceeding in a southerly direction, the driver intending to turn to his right and enter by private driveway the premises of Consolidated Dairy Products, on the westerly or right-hand side of Elliott avenue, about the middle of a block. It had been raining, and the pavement was damp. A street light was suspended over the center of the street, approximately in front of the Dairy Products plant, there being another street light something over three hundred feet to the north.

Following the truck and trailer along Elliott avenue was an automobile, owned and operated by plaintiff Arthur G. Trudeau, Mrs. Trudeau and their friend, George Kumpe, being passengers in the car. Almost immediately after the truck and trailer commenced to turn to the right, Mr. Trudeau's car collided with the trailer, striking it on its left rear corner. The evidence indicates that the Trudeau car was traveling at from twenty to twenty-five miles per hour.

Plaintiffs Arthur G. and Helene Trudeau, husband and wife, sued defendants for damages by way of personal injuries and damage to their car, and George Kumpe also sued for damages as the result of personal injuries which he received. The actions were consolidated for trial and resulted in verdicts in favor of plaintiffs. Motions for judgments in defendants' favor notwithstanding the verdicts, or in the alternative for new trials, upon all statutory grounds, were seasonably interposed. These motions having been denied, judgments were entered upon the verdicts, from which judgments defendants have appealed, the actions having been consolidated for hearing before this court.

Appellants assign error upon the giving of each of seven instructions. They also assign error upon the denial of their motions to dismiss the actions at the close of the respondents' case; upon the denial of their

motions for judgment in their favor notwithstanding the verdicts; and upon the denial of their motions for new trials. Finally, they assign error upon the entry of judgments in respondents' favor.

As appellants did not stand upon their motions to dismiss interposed at the close of respondents' case, but introduced their evidence, they cannot now assign error upon the denial of these motions. Appellants may, however, assign error upon the denial of their motions for judgments in their favor notwithstanding the verdicts, and upon the ruling of the court denying their motions for new trials.

In this connection, appellants argue that the evidence did not disclose any negligence on the part of appellants, and also that respondents Trudeau were guilty of contributory negligence, and that this court should so hold as matter of law.

Respondents, pursuant to the verdicts returned, were awarded judgment as follows: In favor of respondents Trudeau, $7,500 for personal injuries suffered by respondent Helene Trudeau, $1,000 for personal injuries suffered by respondent Arthur G. Trudeau, and $400 on account of damages to respondents' automobile; in favor of respondent George Kumpe, $5,000 on account of personal injuries suffered by him.

As to weather conditions at the time of the accident, the evidence is in conflict. The record contains testimony to the effect that a light rain was falling at the time of the accident, while, in the opinion of other witnesses, the rain had ceased prior to that time. There is, however, no question but that the pavement was wet. Some of the witnesses also testified to the fact that there was some mist in the air, and that the gathering of moisture on the windshield necessitated operation of a swiper.

Appellants contend that the trial court erred in

refusing to grant their motions for judgment in their favor as matter of law, contending that the evidence was insufficient to carry to the jury any question of negligence on their part. They also argue that it should be held that respondent Arthur G. Trudeau, in operating his car, was negligent, and that the court should have held that respondents Trudeau cannot recover because of his contributory negligence.

Respondents contend that the evidence showed that the tail light on appellants' truck was not shining. A witness who saw the accident testified that, after the accident, the tail light was out, and that appellant truck driver stated in the presence of the witness that it had not been shining. There is, however, much testimony in the record to the effect that the rear of the truck carried four running lights, showing red to the rear. There is some evidence to the effect that these lights were dimmed by dirt on the lenses. In view of our conclusion on some other questions, neither the condition nor number of these lights is of great importance.

Respondents contend that appellant driver gave no proper signal of his intention to turn to his right. It appears that the truck was equipped with a semaphore signal, but that, at the time of the accident, this signal was broken and could not be used. The driver testified positively that he did give the required arm signal, giving notice of his intention to turn to the right. The body of the truck was approximately a foot wider than the cab, which would somewhat lessen the visibility of an arm signal. Mr. Trudeau testified that he saw no signal whatsoever. Another witness, testifying on behalf of respondents, stated that, after the accident, appellant driver stated in the presence of the witness that he had given no signal of his intention to turn.

Respondents also contend that, from the evidence, the jury might have found that appellants' truck first

swung to its left, to or beyond the center of the street, and then turned sharply to its right, obstructing practically all of the west half of the highway. The driver of the truck testified that, as he prepared to turn, he slowed down to a speed of four or five miles per hour. Other testimony suggests that he may have been moving at a somewhat faster rate.

As to the location of the exact point where the collision occurred, the evidence is in conflict. Some of the witnesses testified that respondents' automobile and the trailer collided near the middle of the street, while other witnesses fixed the point of collision six or seven feet east of the west curb. From evidence in the record, the jury might have found that, without a signal, or with an arm signal which, because of the size and shape of the truck, could not be seen by the driver of a car following the truck in a position a little to the right of the left side of the truck, the latter was swung sharply first to the left and then to the right. The evidence as to the matter of the existence of lights on the rear of the truck, or the visibility thereof, if any, was also to some extent in conflict.

Appellants contend that, on the question of lights, it should be held, as matter of law, that red lights located upon the rear of the truck were shining, and that it should be held, as matter of law, that respondent Arthur G. Trudeau was guilty of contributory negligence, and that the action of respondents Trudeau should be dismissed. In this connection, appellants cite the cases of *Reincke v. Tacoma R. & P. Co.*, 138 Wash. 304, 244 Pac. 577, and *Graves v. Mickel*, 176 Wash. 329, 29 P. (2d) 405. In the former case, it appeared that the plaintiff, on a rainy night, drove his car into the rear of a parked truck, which plaintiff, although he testified that his lights were working well, did not see until he was within ten feet of the point of collision. In the

latter of the cases cited, the facts were somewhat similar, plaintiff, who drove into a stalled truck, having been held guilty of contributory negligence. In the two cases cited, the trucks into which the respective plaintiffs drove their cars were standing still, and the cases are not controlling here.

The trial court did not err in denying appellants' motions for judgment in their favor as matter of law.

Appellants excepted to several instructions given by the trial court, and assign error upon the giving of these instructions. Instruction No. 7 reads as follows:

"You are instructed that if you find from the evidence herein that the driver of the defendants' truck turned to the right to enter a private driveway from a main traveled highway, then he became the disfavored driver and must use such degree of care that an ordinarily careful and prudent driver would use under like or similar circumstances; any failure so to do is negligence."

It seems probable that, in using the term "disfavored driver," the trial court had in mind situations which arise at street intersections. By Rem. Rev. Stat., Vol. 7A, § 6360-88 [P. C. § 2696-846], it is provided that, on approaching a highway intersection, the operator of any vehicle shall give way to vehicles approaching on his right, arterial highways being excepted from the operation of the statute. Many cases have arisen in which consideration of the section cited was necessary, and the driver on the left has frequently been referred to as "disfavored." These cases fall generally into two classes: First, where two vehicles approaching a street intersection from different directions collide within the intersection; and second, cases involving two vehicles on the same highway, approaching an intersecting street from opposite directions, one of the vehicles turning to its left at the intersection. Our

attention has not been called to any case in which the statute was considered in connection with an action between the drivers of two vehicles which had been proceeding in the same direction on the same street. The last portion of the instruction is correct, but the first portion thereof, in which the jury were told that, when appellant driver turned to his right "he became the disfavored driver," was incorrect and misleading.

■ Appellants also excepted to instruction No. 12, which reads as follows:

"You are instructed that when the defendants attempted to turn their truck off the public highway into a private driveway, they were bound to exercise a degree of care commensurate with the circumstances, and were bound to know that other users of said highway were not required to anticipate that the defendants' truck would be turned off the highway at a point other than at a regular intersection; the plaintiff driver had a right to assume that any such turn would be preceded by a signal and could rely on that assumption until, in the exercise of reasonable care, he knew or should have known otherwise."

Appellants argue that, in so far as by this instruction the jury were told that appellant driver was bound to know that other users of the highway were not required to anticipate that the truck would turn off the highway at a point other than a regular intersection, the instruction lays down for the guidance of the jury an incorrect rule of law.

In the case of *Spencer v. Magrini,* 115 Wash. 29, 195 Pac. 1041, it appeared that the plaintiff was driving north on G street, in the city of Tacoma, the defendant's car following. The defendant testified that he was traveling at about eighteen miles per hour, maintaining a distance of about fifteen feet or less behind plaintiff's car; that suddenly, when defendant's car was within four or five feet of plaintiff's, the latter car, to avoid a

parked car, without warning turned sharply to the left, and in front of defendant's car, resulting in a collision. On appeal, this court affirmed a judgment in favor of the plaintiff, saying in the course of the opinion:

"It was clearly the duty of appellant [defendant] to avoid respondent's car in front of him. The respondent's car had the right of way over the car behind. Respondent was required to avoid the car parked at the side of the street and turned to the left in order to do so. If the appellant desired to pass the respondent's car, it was his duty to give some warning and also to keep far enough to the left to avoid the respondent's car. This he did not do. He was therefore negligent."

In the case of *Bell v. Northwest Cities Gas Co.*, 164 Wash. 450, 2 P. (2d) 644, this court approved an instruction in the following language:

" 'You are further instructed that it is the duty of the driver of an automobile, such as the defendant was in this case, to use due care to avoid colliding with vehicles in front of him, and if you should find from the evidence that the defendant did not use due care to avoid such collision, and that such failure was the proximate cause of the collision, then I instruct you that your verdict should be for the plaintiff.' "

In the case of *Jacklin v. North Coast Transportation Co.*, 165 Wash. 236, 5 P. (2d) 325, error was assigned upon the giving of the following instruction:

" 'You are instructed that it is the duty of one operating an automobile to do so in a careful and prudent manner, and when following behind another vehicle he should proceed at such a speed and at such a distance from the vehicle ahead as will permit him to avoid a collision in the event the automobile ahead may be required to come to a sudden stop, irrespective of whether or not the driver of the preceding vehicle gives any signal of his intention so to stop. He is bound to anticipate that the automobile or vehicle ahead might be required to stop by traffic regulations, and it is his duty to look out and be prepared for a stop

on the part of the automobile ahead required by any traffic signal or regulation, and to keep at such a distance and to maintain such control of his automobile as to enable him to stop without hitting the vehicle ahead.' "

It was held that the instruction embodied a correct statement of the law.

While appellant truck driver, in turning to his right into the private driveway, was bound to exercise a degree of care commensurate with the situation, the trial court erred in instructing the jury that he was also

" . . . bound to know that other users of said highway were not required to anticipate that defendants' truck would be turned off the highway at a point other than at a regular intersection."

Many dwellings and buildings used for business purposes maintain private driveways which are frequently used. It cannot be said, as matter of law, that the driver of an automobile following another car should not have in mind the possibility that the preceding car may turn from the street into a private driveway. The trial court correctly instructed the jury that respondent driver had the right to assume that any such turn would be preceded by a proper signal, but, as above indicated, the instruction was erroneous in the particular mentioned.

In support of their contention that the instruction laid down the correct rule of law, respondents cite *Jovaag v. O'Donnell,* 189 Minn. 315, 249 N. W. 676; *Balzer v. Caldwell,* 220 Wis. 270, 263 N. W. 705; and *Reichert v. Rex Accessories Co.,* 228 Wis. 425, 279 N. W. 645. In the first case cited, the supreme court of Minnesota considered a statute of that state (Mason's Minn. St. 1927, § 2720-17) which provided:

"The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall

first see that such movement can be made in safety," etc.

The opinion calls attention to other negligent acts of the driver of the leading car.

In the other two cases cited, the supreme court of Wisconsin had before it a statute of that state (§ 85.16 (2) Stats. 1935, Wisconsin Laws of 1929, chapter 454, p. 708) which provided:

"The operator of a vehicle upon a roadway shall not deviate from the traffic lane in which he is operating without first ascertaining that such movement can be made with safety to other vehicles approaching from the rear."

The Wisconsin statute defines a traffic lane as

"That portion of a roadway paralleling the center line of the roadway having a width of not less than seven feet and not more than ten feet, whether or not such portion is indicated by marks or markers." (§ 85.10 (34), Stats. 1935, Wisconsin Laws of 1929, chapter 454, p. 705.)

Rem. Rev. Stat., Vol. 7A, § 6360-80 [P. C. § 2696-838], reads in part as follows:

"Whenever a roadway has been divided into three or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply:

"(a) Every vehicle shall be operated as nearly as practical entirely within a single lane and shall not be moved from such lane until the operator thereof has first ascertained that such movement can be made with safety; . . ."

As it nowhere appears that Elliott avenue west was divided into three or more lanes for traffic, the section of our code last quoted does not apply, and the cases decided by the supreme court of Wisconsin are not in point. The cases also differ on the facts from

the case at bar. The authorities relied upon by respondents are not in point.

■ Respondents also contend that, because the court properly instructed the jury as to the duty of the operator of an automobile, when following another vehicle, to exercise care, keep his car under reasonable control, and be alert to existing conditions, the instructions above held erroneous were not prejudicial. We are of the opinion that the rule which respondents contend should be applied is not here applicable, and that it cannot be held that the erroneous instructions, in view of others given, were not prejudicial.

■ Appellants excepted to instruction No. 27, which concerned any verdict the jury might return in favor of respondent George Kumpe. By this instruction, the jury were told that they should take into consideration any loss of earnings which respondent Kumpe had suffered, or probably would suffer in the future, as a result of the injuries he received in the collision, and that respondent Kumpe would also be entitled to recover the reasonable cost of necessary medical and hospital treatment, together with an allowance for future medical care and attention. Respondent Kumpe is an officer of the United States army, and we find in the record no evidence that, as a result of the accident, he lost any earnings whatsoever. The instruction, then, submitted to the jury, as an element of damage, a matter concerning which there was no evidence in the record. It should also be noted that, in his complaint, respondent Kumpe did not allege that he had suffered any loss of earnings, or that his earning capacity had been impaired by his injuries.

■ It may also be doubted that the record contains any evidence as to the reasonable value of respondent Kumpe's expenditures for medical service and hospital bills. Expenditure or liability for these items,

together with the reasonableness of the amounts, must be proved as any other alleged item of damage.

The instruction complained of was erroneous in the two particulars noted. *Van Liew v. Atwood,* 115 Wash. 580, 197 Pac. 921; *Ely v. North Coast Lines,* 151 Wash. 137, 275 Pac. 78; *Cole v. Schaub,* 164 Wash. 162, 2 P. (2d) 669, 7 P. (2d) 1119; *Hutteball v. Montgomery,* 187 Wash. 516, 60 P. (2d) 679.

In view of the fact that the judgment appealed from must be reversed and a new trial ordered, other errors relied upon by appellants need not be discussed.

For error in instructing the jury, the judgment appealed from is reversed, with directions to the trial court to grant a new trial.

STEINERT, GERAGHTY, and JEFFERS, JJ., concur.

BLAKE, C. J. (dissenting)—I think the instructions complained of only imposed upon defendants the obligation to exercise reasonable care under the facts and circumstances established by plaintiffs' evidence. According to plaintiffs' version of the collision, the truck, without warning, first turned suddenly over to the left side of the pavement and then turned sharply to the right to enter the private driveway—thus blocking the pavement to its full width. To execute such a maneuver without warning in the middle of the block, to my mind, constitutes negligence, and that, in final analysis, is all that the instructions infer.

I dissent.