[No. 18885-6-II.   Division Two.   January 10, 1997.]
DEBRA PATTERSON, *Individually and as Personal Representative, Respondent*, v. DAVID HORTON, ET AL., *Defendants*, MICHAEL HUNDLEY, *Respondent*, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, ET AL., *Appellants*.

*Christine O. Gregoire, Attorney General,* and *Gordon Ji Liu, Assistant,* for appellants.

*James R. Cushing; Christopher J. Mahoney, Todd P. Kilpatrick,* and *Paine & Kilpatrick, Inc., P.S.;* and *James F. Leggett* and *Leggett & Kram,* for respondents.

SEINFELD, J. — This case arises out of a two-vehicle collision in which Debra Patterson and her three children, passengers in Michael Hundley's vehicle, were injured. The Department of Social and Health Services (DSHS) paid the medical bills for Patterson and the children after obtaining their agreement to assign to DSHS their rights to any third party recovery. The trial court, however, applied equitable subrogation principles to deny DSHS its full subrogation rights. DSHS appeals this ruling. Patterson appeals the trial court's dismissal of her action against Hundley for failing to fasten the children's seat belts properly. Finally, Hundley, who had filed cross-claims against the driver and passenger of the other vehicle, cross-appeals, raising evidentiary and equitable estoppel issues.

We conclude that the application of equitable subrogation principles in this context conflicts with state statute. Thus, we reverse the trial court ruling against DSHS. We further conclude that the trial court erred in relying on medical bills as proof of medical costs without requiring the plaintiff to show that the bills were reasonable and the treatment was necessary. Thus, we remand the matter for recalculation of damages. We affirm the balance of the trial court's rulings.

## FACTS

A head-on collision between David Horton's and Michael Hundley's vehicles resulted in injuries to Hundley, Patterson, her three minor children, and Vaughn Pol, Horton's passenger. Patterson applied to DSHS for help with her family's medical expenses. DSHS agreed to pay on the condition that Patterson assign to it the family's rights to recover damages from a liable third party. DSHS then asserted a statutory lien against any recovery Patterson might have from Horton.

Patterson, individually and on behalf of her children, filed a personal injury action against Horton, Hundley, and Pol. She also sought declaratory relief against DSHS. Pol and Hundley cross-claimed against Horton, and Hundley cross-claimed against Pol. Horton admitted liability, but his only asset, a $50,000 insurance policy, was insufficient to cover all alleged damages.

The trial court dismissed Patterson's action against Hundley, concluding that her action for damages against Hundley for failing to fasten the children's seat belts did not state a claim upon which relief could be granted. But it granted Patterson's motion for partial summary judgment against DSHS, relying on equitable subrogation principles to effectively bar DSHS from recovering compensation for any of the medical services rendered to Patterson and her children.

Pol, the most seriously injured party, feared that a recovery in this action might jeopardize his eligibility for disability benefits. Thus, before trial he began negotiating his dismissal separately with Hundley and Patterson. During pretrial proceedings, Patterson and Pol mentioned to the court that Pol intended to stipulate to an "outright" dismissal of his claim against Horton in exchange for dismissal of Patterson's claims against him.[1]

One week later, Patterson and Pol, without notice to Hundley, presented a stipulated order to the judge who was overseeing their settlement conference. The order assigned Pol's right to recover from Horton to Patterson and her children and dismissed Pol's claim against Horton.

When Hundley learned of the order, he moved to vacate it on the basis of lack of proper notice. The assigned trial judge refused to hear the motion and advised Hundley to take the matter up with the settlement conference judge. The settlement conference judge granted the motion to vacate but refused to rule on the validity of Pol's assignment of his claim to Patterson. Patterson and Pol then moved to dismiss Pol under CR 41, this time after giving Hundley proper notice. The assigned trial judge granted this motion without objection.

Twenty-three days before trial, Patterson provided to opposing counsel the medical records she intended to introduce at trial. Hundley objected, asserting that Patterson had not complied with ER 904's 30-day notice requirement. Further, he argued that the documents were inadmissible absent evidence that the medical treatment and bills were necessary and reasonable.

Patterson subpoenaed the physicians, but when they objected to the subpoenas, Patterson called the records'

---

[1]Trial court approval was necessary because the trial court had not yet appointed a guardian ad litem to represent the children.

custodians instead. The trial court, over Hundley's standing objection, admitted the challenged documents.[2]

Following a bench trial, the trial court found Patterson, the children, Hundley, and Pol all without fault. It determined damages as follows: $41,000 for the children collectively; $47,500 for Patterson; $37,000 for Hundley; and $486,304.64 for Pol.

On appeal, DSHS contends that the trial court erred as a matter of law when it applied equitable subrogation principles to limit DSHS's statutory lien and subrogation rights. Patterson argues that the trial court erred when it dismissed her inadequate restraint claim against Hundley. Hundley asserts that the trial court erroneously (1) admitted the medical records; (2) entered the judgment dismissing Pol without ruling on the enforceability of Pol's assignment of his claim to Patterson; and (3) refused to hear arguments on his motion to vacate the stipulated order.

I

DSHS and Equitable Subrogation

In equity, an insurer's right to recover a subrogation interest is confined to "the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss." *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 219, 588 P.2d 191 (1978). Accordingly, Patterson contends that DSHS cannot assert its subrogation right until she and her children are fully compensated for their loss. We disagree and adopt the reasoning of a recent case from Division One of this court. *Paulsen v. Department of Soc. & Health Servs.*, 78 Wn. App. 665, 898 P.2d 353 (1995), *review denied*, 128 Wn.2d 1010 (1996).

The Legislature may override common law subrogation

---

[2]Hundley waived his objection to Dr. Stewart's bill after Dr. Stewart appeared in court to object to the subpoena. Thus, our decision regarding the medical bills does not include Dr. Stewart's charges.

principles by enacting a statute that provides an agency with the power to seek reimbursement through subrogation *and*, in addition, authorizes the agency to assert a statutory lien to protect its interest. *See Rhoad v. McLean Trucking Co., Inc.*, 102 Wn.2d 422, 427-28, 686 P.2d 483 (1984) (equitable principles do not apply to statutory liens); *Department of Labor & Indus. v. Dillon*, 28 Wn. App. 853, 855, 626 P.2d 1004 (1981) (statute creating statutory lien for securing reimbursement demonstrates the Legislature's intent to displace equitable principles); *cf. Jones v. Firemen's Relief & Pension Bd. of the City of Richland*, 48 Wn. App. 262, 267, 738 P.2d 1068 (1987) (Legislature did not express intent to displace equitable subrogation principles when it adopted statutory remedy creating right to subrogation unaccompanied by the right to assert a statutory lien). The *Paulsen* court, relying on *Rhoad* and *Dillon*, held that the Legislature removed the recipient's right to assert common law subrogation principles against DSHS when it adopted statutes providing DSHS with both the right to subrogation and the power to assert a statutory lien. *See* RCW 74.09.180 and RCW 43.20B.060. Thus, a recipient of DSHS medical benefits may not rely upon equitable subrogation principles even though his damage recovery did not make him whole. *Paulsen*, 78 Wn. App. at 669-70, 672.

Patterson claims that *Paulsen* is factually distinguishable in that Paulsen settled his claim while Patterson recovered her damages through litigation and that, in her case, DSHS might be able to recover its funds by seeking criminal restitution from Horton. She also argues that *Paulsen* was wrongly decided.

Generally, DSHS will pay for medical care for eligible persons under RCW 74.09. It is not obligated to do so, however, if the claimant's injuries are caused by the negligence or wrongdoing of another. RCW 74.09.180. When DSHS does elect to pay for medical expenses resulting from another's wrongdoing, it is "subrogated to the recipient's rights against the recovery had from any tort

feasor or the tort feasor's insurer, or both, and shall have a lien thereupon to the extent of the value of the assistance furnished by the department." RCW 74.09.180. Accordingly, DSHS can seek reimbursement through a subrogation claim and the assertion of a statutory lien.[3] RCW 43.20B.060.

Although Paulsen later settled with the tort feasors instead of proceeding to trial, we see no reason why that fact changes the analysis. Nor do we see a basis to compel the State to recover its payments in a criminal restitution action when the Legislature provided it with the right of subrogation and the means to enforce that right.

■■ Finally, Patterson posits, for the first time in her reply brief, that RCW 43.20B.060(2) violates the equal protection guaranties of the federal and state constitutions. This contention, however, is untimely and unsupported by adequate legal citation or argument. *See State v. Lord*, 117 Wn.2d 829, 853, 822 P.2d 177 (1991) (holding that appellate court may decline to review argument unsupported by legal authority), *cert. denied*, 506 U.S. 856 (1992); RAP 10.3(a)(5); *State v. Peerson*, 62 Wn. App. 755, 778, 816 P.2d 43 (1991) (holding that a reviewing court need not address issues of constitutional magnitude first raised in a reply brief), *review denied*, 118 Wn.2d 1012 (1992); RAP 10.3(c). Patterson's other attempts at distin-

---

[3]RCW 43.20B.060 provides in relevant part:

"(1) To secure reimbursement of any assistance paid under chapter 74.09 RCW . . . as a result of injuries to or illness of a recipient caused by the negligence or wrong of another, the department shall be subrogated to the recipient's rights against a tort feasor or the tort feasor's insurer, or both.

"(2) The department shall have a lien upon any recovery by or on behalf of the recipient from such tort feasor or the tort feasor's insurer, or both to the extent of the value of the assistance paid . . . .

"(3) The lien of the department shall be upon any claim, right of action, settlement proceeds, money, or benefits arising from an insurance program to which the recipient might be entitled (a) against the tort feasor or insurer of the tort feasor, or both, and (b) under any contract of insurance purchased by the recipient or by any other person providing coverage for the illness or injuries for which the assistance or residential care is paid or provided by the department."

guishing or discrediting the *Paulsen* ruling are similarly unpersuasive.

## II
### Seat Belt Law and Patterson's Cross-Appeal

Patterson, on behalf of her three children, cross-appeals the trial court's dismissal of her claim that Hundley's failure to adequately restrain the children proximately caused their injuries.

The Washington Supreme Court first addressed whether there is a common law duty to wear a seat belt in *Derheim v. N. Fiorito Co.*, 80 Wn.2d 161, 492 P.2d 1030 (1972), where it held that failure to wear a seat belt did not constitute contributory negligence. Finding no statutory duty to wear a seat belt, the Court refused to recognize a common-law duty. *Derheim*, 80 Wn.2d at 171.

In *Amend v. Bell*, 89 Wn.2d 124, 132-33, 570 P.2d 138 (1977), the Court reaffirmed its ruling in *Derheim*, again declining to hold that persons riding in a vehicle equipped with safety belts have a duty to properly restrain themselves. The Court reasoned that

> The defendant should not diminish the consequences of his negligence by the failure of the plaintiff to anticipate the defendant's negligence in causing the accident itself. Only if plaintiff should have so anticipated the accident can it be said that plaintiff had a duty to fasten the seat belt prior to the accident.

*Amend*, 89 Wn.2d at 132-33.

■ Since the *Amend* decision, the Legislature has adopted two public safety laws mandating the use of seat belts and appropriate safety restraints for children. *See* former RCW 46.61.687[4] (enacted by LAWS OF 1983, ch. 215,

---

[4]Former RCW 46.61.687 provided in relevant part:

"(1) After December 31, 1983, the parent or legal guardian of a child less than five years old, when the parent or legal guardian is operating anywhere in

§ 2; amended by LAWS OF 1987, ch. 330, § 745) (requiring parents and legal guardians to secure infant passengers with appropriate restraining systems) and RCW 46.61.688[5] (prohibiting the operation of a motor vehicle in which passengers under the age of sixteen are not properly restrained). Although these statutes create an affirmative duty to use a seat belt, they also contain provisions excluding evidence of seat belt law violations to prove civil negligence. As a driver's failure to secure a minor passenger is not actionable in an action for damages, the trial court did not err in dismissing the action against Hundley for negligent restraint.

## III

### Hundley's Cross-Appeal

### A. Admission of Medical Reports and Bills

In his cross-appeal, Hundley challenges the admission of certain medical bills and records (Exhibits 7 to 21 and 30 to

---

the state his or her own motor vehicle registered under chapter 46.16 RCW, in which the child is a passenger, shall have the child properly secured in a manner approved by the state patrol. Even though a separate child passenger restraint device is considered the ideal method of protection, a properly adjusted and fastened, federally approved seat belt is deemed sufficient to meet the requirements of this section for children one through four years of age.

". . . .

"(3) Failure to comply with the requirements of this section shall not constitute negligence by a parent or legal guardian; nor shall failure to use a child restraint system be admissible as evidence of negligence in any civil action."

[5]RCW 46.61.688 provides in relevant part:

"(3) Every person sixteen years of age or older operating or riding in a motor vehicle shall wear the safety belt assembly in a properly adjusted and securely fastened manner.

"(4) No person may operate a motor vehicle unless all passengers under the age of sixteen years are either wearing a safety belt assembly or are securely fastened into an approved child restraint device.

". . . .

"(6) Failure to comply with the requirements of this section does not constitute negligence, nor may failure to wear a safety belt assembly be admissible as evidence of negligence in a civil matter."

31).[6] He claims that the trial court improperly shifted the burden to him to prove the charges unreasonable or the treatment unnecessary. In overruling Hundley's objection to this evidence, the trial court adopted Patterson's argument that payment of the bills created a presumption that they were reasonable and necessary, stating, "if [Hundley] can show that [the bills are] not reasonable and necessary and not causally related to this accident, so be it."

At trial, Patterson relied on the testimony of the records custodians to overcome the hearsay rule and to establish the relevancy of the records.[7] The use of the custodian accomplished the first goal. The Uniform Business Records as Evidence Act, RCW 5.45.020, provides that records kept in the ordinary course of business, "in so far as relevant," may be introduced in a civil case if they are identified and authenticated by the record's custodian.[8] But the custodian offered no testimony regarding the relevancy of the records.

---

[6]Exhibits 7 to 12 are the medical billing records from Multi-Care for the treatment of Patterson's children. The balance relate to Pol's treatment, as follows: Ex. 13, billing records from St. Clare Hospital; Ex. 14, records and billing from Madigan Hospital; Ex. 15, health insurance claim form from Lakewood Healthcare Center; Ex. 16, report and billing statement from Electrodiagnosis & Rehabilitation Associates of Tacoma; Ex. 17, home health care medical records and bills from Interim Healthcare; Ex. 18, equipment rental bills and insurance records from Sound Medical Equipment, Inc.; Ex. 19, bills and treatment records from Physical Therapy Specialists; Ex. 20, medical records from Harborview Medical Center; Ex. 21, insurance carrier billing records; Ex. 30, records from surgery performed by Jeffrey D. Patterson, M.D.; and Ex. 31, Pol's billing records from Jeffrey D. Patterson, M.D. Hundley did not object to Exs. 10 to 12 and, thus, has waived his right to challenge them.

[7]Had Patterson given timely notice pursuant to ER 904, she would have eliminated the need to call a witness to authenticate the records. *See Miller v. Arctic Alaska Fisheries Corp.*, 83 Wn. App. 255, 261, 921 P.2d 585 (1996).

[8]RCW 5.45.020 provides:

"A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

■ ■ A plaintiff in a negligence case may recover only the reasonable value of medical services received, not the total of all bills paid. *Torgeson v. Hanford*, 79 Wash. 56, 58-59, 139 P. 648 (1914). Thus, the plaintiff must prove that medical costs were reasonable and, in doing so, cannot rely solely on medical records and bills. *Nelson v. Fairchild*, 40 Wn.2d 496, 501, 244 P.2d 244 (1952); *Carr v. Martin*, 35 Wn.2d 753, 761, 215 P.2d 411 (1950); *Trudeau v. Snohomish Auto Freight Co.*, 1 Wn.2d 574, 585-86, 96 P.2d 599 (1939); *Torgeson*, 79 Wash. at 58-59. In other words, medical records and bills are relevant to prove past medical expenses only if supported by additional evidence that the treatment and the bills were both necessary and reasonable.

When evidence is relevant only if supported by proof of supplemental facts, the trial court "shall" conditionally admit the primary evidence subject to the introduction of further "evidence sufficient to support a finding of the fulfillment of the condition." ER 104(b). But, if this condition is not satisfied, the court should strike the primary evidence. 5 KARL B. TEGLAND, WASHINGTON PRACTICE, § 19 (3rd ed. 1989). Here, Patterson made no showing of reasonableness and necessity and, thus, never fulfilled the condition. Thus, the trial court erred when it admitted the documents as proof of past medical expenses and when it shifted to Hundley the burden of proving that the costs and care were unreasonable and unnecessary.

■ The medical records and bills were admissible, however, without a showing of reasonableness and necessity, to prove costs of future treatment. *Erdman v. Lower Yakima Valley, Wash. Lodge No. 2112*, 41 Wn. App. 197, 208, 704 P.2d 150, *review denied*, 104 Wn.2d 1030 (1985). Patterson could properly use the bills to create a presumption that there will be, at a minimum, a nominal cost for such future treatment. *Erdman*, 41 Wn. App. at 208-09 (citing *Leak v. United States Rubber Co.*, 9 Wn. App. 98, 104, 511 P.2d 88, 89 A.L.R.3d 78 (quoting *Webster v. Seattle R. & S. Ry. Co.*, 42 Wash. 364, 365, 85 P. 2

(1906)), *review denied*, 82 Wn. App. 1012 (1973)). In the case of future damages, mathematical exactness is not necessary. *Erdman*, 41 Wn. App. at 208.

In summary, there is no evidence to support portions of the award for past medical damages. Accordingly, we must remand the matter to the trial court for a recalculation of damages excluding those special damages based upon the challenged medical records and bills.

### B. Assignment of Pol's Claim

Hundley next asserts that the trial court should have applied the doctrine of equitable estoppel to prevent Pol from assigning his rights to Patterson. He contends that he relied upon Pol and Patterson's assertions in open court that Pol would be dismissed outright from the case and, consequently, ceased efforts to negotiate Pol's dismissal. He claims that this caused him harm.

Equitable estoppel requires: (1) an admission, statement, or act inconsistent with a claim later asserted; (2) reasonable reliance on that act, statement, or admission by another; and (3) injury to the party who relied if the court allows the first party to contradict or repudiate the prior act, statement, or admission. *Robinson v. City of Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318, *cert. denied*, 506 U.S. 1028 (1992). The party asserting estoppel must establish not only lack of knowledge of the state of facts, but also the absence of any convenient and available means of acquiring such knowledge. *Chemical Bank v. Washington Pub. Power Supply Sys.*, 102 Wn.2d 874, 691 P.2d 524, (1984) (citing *Leonard v. Washington Employers, Inc.*, 77 Wn.2d 271, 280, 461 P.2d 538 (1969)), *cert. denied*, 471 U.S. 1065 (1985). Estoppel is not favored and a party asserting estoppel must prove each of its elements by clear, cogent and convincing evidence. *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 831, 881 P.2d 986 (1994).

Hundley's argument fails on prong (1). Hundley claims

that Pol's statement to the court, in essence, constituted a promise to Hundley that Patterson would dismiss her claims against Pol outright. Patterson, however, explained to the court that the terms of the dismissal would be contingent upon the court's approval. This placed Hundley on notice that the terms of the dismissal might change. Thus, Hundley cannot establish reasonable reliance on the in-court statements.

## C. Enforceability of the Assignment

Again asserting his equitable estoppel argument, Hundley contends that the trial court erred when it failed to rule on the enforceability of the assignment. As stated above, Pol was not equitably estopped from assigning his rights to Patterson. Thus, the trial court did not err when it failed to rule on the enforceability of Pol's assignment.

## D. Trial Court's Refusal to Hear the Motion to Vacate

Hundley contends that the trial court abused its discretion when it declined to hear Hundley's motion to vacate the stipulated dismissal order. The trial court did not abuse its discretion; its decision not to hear the motion was neither untenable nor unreasonable.

Accordingly, we affirm in part, and reverse in part and remand for proceedings consistent with this opinion.

BRIDGEWATER and ARMSTRONG, JJ., concur.

Reconsideration denied February 20, 1997.