FILED
COURT OF APPEALS
STATE OF WASHINGTON

2013 JUL -8 A 10: 49



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| BENJAMIN GONZALEZ-MENDOZA;<br>PEDRO GONZALEZ-MENDOZA; and<br>EFRAIN TAPIA-CRUZ,<br><br>   Appellants,<br><br>   v.<br><br>ANNSIANNE S. BURDICK,<br><br>   Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 68346-2-I<br><br><br><br><br><br>UNPUBLISHED OPINION<br><br>FILED: July 8, 2013 |

VERELLEN, J. — Benjamin Gonzalez-Mendoza, Pedro Gonzalez-Mendoza, and Efrain Tapia-Cruz[1] suffered injuries after Annsianne Burdick rear-ended their van. Appellants contend the trial court erred by denying their pretrial motion to exclude Burdick's expert, a biomechanical engineer, because his testimony about the forces in the collision and the existence of an injury mechanism met neither ER 702 nor the Frye[2] test for admissibility of novel scientific evidence. The expert's testimony about the forces in the collision was not novel and satisfied ER 702. Appellants waived any objection to the expert's injury mechanism testimony because their counsel reached an agreement with opposing counsel at trial that limited the scope of the testimony.

---

[1] Henceforth collectively referred to as either "Plaintiffs" or "Appellants."

[2] Frye v. United States, 54 App. D.C. 46, 293 F. 1013 (1923).

Appellants also contend the trial court erred in denying their motion for new trial. Appellants presented expert testimony that the cost of their medical care was reasonable and necessary. Burdick neither cross-examined Appellants' expert on this issue, nor presented any of her own evidence to the contrary. Neither Burdick's expert nor any other witness testified that Appellants' injuries were not caused by the collision. We conclude the trial court erred in denying Appellants' motion for a new trial on special damages because the award was not supported by the evidence. We remand to allow the trial court to exercise its discretion to choose between additur or a new trial on special damages. Appellants do not establish that they are entitled to a new trial on general damages.

## FACTS

Plaintiffs filed suit against Annsianne Burdick claiming personal injury and property damage after she rear-ended their van on September 25, 2007. Plaintiffs did not seek medical help immediately after the accident, although all three testified that they felt pain immediately. Five weeks after the accident, Plaintiffs sought chiropractic care from Chiropractic Physicians, Inc.

Benjamin[3] was diagnosed with a moderate sprain/strain to his thoracic and lumbar spine with associated joint subluxation complexes and myospasm, and with a sprain/strain to his right wrist. He testified that the injuries and associated pain affected his personal life and limited his ability to do his job as a roofer. Pedro was diagnosed with subacute, moderate sprain/strain injuries to his lumbar and thoracic spine and associated joint subluxation complexes and myospasm. Pedro testified that his injuries

---

[3] For ease of reference, we use Appellants' first names.

and associated pain interfered with his job as a roofer and made it more challenging to provide for his family. Efrain was diagnosed with subacute, moderate sprain/strain injuries to his cervical and thoracic spine with associated joint subluxation complexes and myospasm. Efrain similarly testified that his injuries and associated pain interfered with his job as a roofer and prevented him from providing fully for his family. None of the Plaintiffs had prior neck or back injuries.

Before trial, Burdick stipulated to negligence[4] and the absence of comparative fault, leaving the elements of proximate cause and damages for the jury's determination. Plaintiffs then moved to exclude the testimony of defendant's causation expert, Bradley Probst, a biomechanical engineer.

Probst opined in his written report that Burdick's speed at impact with the van resulted in a very small "delta-v" change, so the force on each body could not have caused the injuries—i.e., there was no "injury mechanism" in the collision.[5] Plaintiffs moved to exclude Probst's testimony under Frye, under ER 702, and under ER 401 and 403. The trial court denied the motion.

---

[4] The stipulation states Burdick stipulated to liability, but the jury instructions reflect that Burdick stipulated only to duty and breach, not causation and damages: "You do not need to decide whether the defendant was negligent. The defendant's negligence has been admitted. You are to decide what injuries and/or damages, if any, plaintiffs should recover. The plaintiffs have the burden of proof on these issues." Clerk's Papers at 130.

[5] "The acceleration experienced by [Plaintiffs] was within the limits of human tolerance and the personal tolerance levels of them based on an engineering analysis of their medical records and was comparable to that experienced during various daily activities. . . . There is no causal link between the reported cervical spine injuries and this reported collision. . . . There is no causal link between the reported lumbar and thoracic spine injuries and this reported collision." Clerk's Papers at 89.

3

At trial, Probst testified about his calculations of the forces involved in the collision. After Probst had testified about his background as a biomechanical engineer and about the methodologies he employed to conduct a biomechanical injury assessment analysis, the court recessed. At the beginning of the afternoon session, counsel for Plaintiffs objected that some of Probst's testimony verged on "causation of these particular injuries . . . . because he is not a medical provider, he is not qualified under our case law to talk at all about diagnoses, about causation, he's only qualified to talk about injury potential from his calculation of forces."[6] The trial judge, who had not heard Plaintiffs' pretrial motion to exclude Probst, requested briefing on the objection unless counsel could reach an agreement about the scope of Probst's testimony. After another recess, counsel then told the court they had reached an agreement. Counsel did not state the agreement on the record.

After reaching the agreement, defense counsel asked Probst, "[S]o you have no intention of saying whether or not these men were injured in this accident; is that right?"[7] He answered, "Correct."[8] Later in direct examination, Probst gave the following testimony:

> Q: [Y]ou have said that you testify about the mechanical failure of biological tissue, can you explain that for the jury?
>
> A: Okay. Well, I guess the first part of the question, yes, they have performed studies looking at, you know, how people respond to this amount of force . . . .
>
> . . . .

---

[6] Report of Proceedings (RP) (Dec. 13, 2011) at 91.

[7] Id. at 99.

[8] Id.

4

> Q: Okay. In an accident such as this with the forces that you've described, what is your opinion in general—accidents of this speed with similar vehicles, what is the likelihood of damage to the human tissue?
>
> A: Okay. Well, it's not just the speed, we also have to look at restraint . . . . So, in essence, you have very limited force applied to the body in an event like this.[9]

Plaintiffs' counsel did not object to Probst's conclusion that "limited force" was applied to the body in a collision similar to the one Plaintiffs experienced.

Plaintiffs' medical provider, Dr. Leonardo Romero, D.C., chief of staff at Chiropractic Physicians, testified he recommended chiropractic care, massage therapy, and home exercises for each, with the frequency of care decreasing as their injuries improved. After approximately three months of treatment, the medical providers determined that all three had sufficiently improved and instructed them to return to the clinic if needed. None returned for more care.

Dr. Romero also testified that Plaintiffs' injuries were, on a medically more probable than not basis, caused by Burdick's rear-end collision with the van. Finally, Dr. Romero testified that the treatment plan each received was medically necessary to treat their injuries, and that the charges for the medical care were reasonable. The special damages were $3,615.70 for Benjamin, $3,378.15 for Pedro, and $3,118.50 for Efrain. Burdick did not cross-examine Dr. Romero on whether Plaintiffs' medical services and associated costs were reasonable and necessary.

At the close of evidence, Plaintiffs requested that the court write the full amount of special damages in the special verdict forms for each of them, leaving the issues of

---

[9] Id. at 117-19.

5

proximate cause and general damages for the jury. The court rejected the request, stating, "I think at this point we need to see what the jury does. . . . [a]nd consider additur, depending on what they do."[10]

The jury returned verdicts in favor of Plaintiffs on the bodily injury claims, awarding each a fraction of the requested special damages: $923.55 for Benjamin, $1,055.55 for Pedro, and $956.55 for Efrain. The jury did not award any noneconomic damages.[11]

Plaintiffs filed a motion for new trial, arguing under CR 59(a)(5) that the jury's verdict was inadequate and must have been the result of passion or prejudice, and under CR 59(a)(7) that no substantial evidence or reasonable inference from the evidence justified the verdict. As an alternative to a new trial, Plaintiffs requested additur in the amount of their special damages, plus general damages the court believed to be fair. The court denied the motion. Plaintiffs timely appealed.

## DISCUSSION

*Motion to Exclude Probst's Testimony*

Appellants contend Probst's testimony should have been excluded under Frye, ER 702,[12] as well as under ER 401 and ER 403. Specifically, Appellants contend

---

[10] RP (Dec. 14, 2011) at 24.

[11] The jury awarded $400 on the property damage claim. Appellants do not challenge this verdict on appeal.

[12] ER 702 provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Probst gave inadmissible testimony on both (1) the change in velocity and G-force exerted during the accident, and (2) on the absence of an injury mechanism.

We review de novo a trial court's exclusion of evidence under Frye.[13] We review a trial court's decision concerning the admissibility of expert testimony for an abuse of discretion.[14] A trial court abuses its discretion by issuing manifestly unreasonable rulings or rulings based on untenable grounds, such as a ruling contrary to law.[15]

The trial court must exclude expert testimony involving scientific evidence unless the testimony satisfies both Frye and ER 702.[16] To admit evidence under Frye, the trial court must find that the underlying scientific theory and the "'techniques, experiments, or studies utilizing that theory'" are generally accepted in the relevant scientific community and capable of producing reliable results.[17] To admit expert testimony under ER 702, the trial court must determine that the witness qualifies as an expert and the testimony will assist the trier of fact.[18] Unreliable testimony does not assist the trier of fact.[19] Frye and ER 702 work together to regulate expert testimony. Frye excludes testimony based on novel scientific methodology until a scientific consensus decides the methodology is

---

[13] Lakey v. Puget Sound Energy, 176 Wn.2d 909, 919, 296 P.3d 860 (2013).

[14] Id.

[15] Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

[16] State v. Copeland, 130 Wn.2d 244, 255-56, 922 P.2d 1304 (1996).

[17] Anderson v. Akzo Nobel Coatings, Inc., 172 Wn.2d 593, 603, 260 P.3d 857 (2011) (quoting State v. Riker, 123 Wn.2d 351, 359, 869 P.2d 43 (1994)).

[18] Stedman v. Cooper, 172 Wn. App. 9, 16, 292 P.3d 764 (2012); see also State v. Cauthron, 120 Wn.2d 879, 890, 846 P.2d 502 (1993).

[19] Anderson, 172 Wn.2d at 600.

reliable. ER 702 excludes testimony where the expert fails to adhere to that reliable methodology.[20]

### a. Delta V and G Force Testimony

Appellants contend Probst employed a novel methodology for conducting his "delta v" (or change in velocity) calculations, which is not generally accepted in the scientific community. Probst used the following material in his calculations to determine the "delta v." Plaintiffs' medical records, deposition transcript of Burdick, photographs of the vehicles, repair estimates, and AutoStats data sheets for both vehicles. As set forth in his expert report, Probst determined that the contact between the two vehicles resulted "in a change in velocity at or below 3.3 miles per hour with maximum accelerations at or below 1.5g for the GMC Safari and its occupants."[21] Appellants highlight that Probst did not demonstrate how his methodology was generally accepted in the automotive industry other than by bare assertion and citation to engineering journals discussing accident reconstruction and biomechanical data.

Burdick relies on a case from Division Two of this court, Ma'ele v. Arrington,[22] in which similar expert testimony by a biomechanical engineer was found admissible under Frye. In Ma'ele, the court summarily concluded a biomechanical engineer's testimony that involved calculation of the maximum force that could have impacted the vehicle occupant was generally accepted in the scientific community.[23] Appellants contend we should decline to consider Ma'ele because the court there did not actually

---

[20] Cauthron, 120 Wn.2d at 889-90.

[21] Clerk's Papers at 89.

[22] 111 Wn. App. 557, 45 P.3d 557 (2002).

[23] Id. at 563.

engage in a Frye analysis. Instead, the court briefly reviewed the expert's resume and cited to his own testimony that his conclusions were "pretty much" accepted.[24]

As our Supreme Court recently emphasized in Lakey v. Puget Sound Energy,[25] Frye is implicated only where the scientific methodology itself is novel, not where an expert engages in an established methodology of questionable accuracy. While Frye governs the admissibility of novel scientific testimony, the application of accepted techniques to reach novel conclusions does not raise Frye concerns.[26]

The record does not suggest that Probst's methodology to determine change in velocity is so novel as to trigger a Frye analysis. Indeed, at oral argument, Appellants' counsel conceded that there was nothing novel about Probst's calculation of the forces involved in the collision.

"'Once a methodology is accepted in the scientific community, then application of the science to a particular case is a matter of weight and admissibility under ER 702, which allows qualified expert witnesses to testify if scientific, technical, or other specialized knowledge will assist the trier of fact.'"[27] Both this court in Stedman v.

---

[24] Id.

[25] 176 Wn.2d 909, 919, 296 P.3d 860 (2013) (Frye applies if "'either the theory and technique or method of arriving at the data relied upon is so novel that it is not generally accepted by the relevant scientific community'" (quoting Anderson, 172 Wn.2d at 611) (reversing trial court's decision to exclude challenged epidemiology expert under Frye, where expert failed to follow proper methodology but did not employ a novel theory or technique that triggered Frye concerns)); see also Clerk's Papers at 85-86 (explanation of calculations).

[26] Lakey, 176 Wn.2d at 919.

[27] Anderson, 172 Wn.2d 603 (quoting State v.Gregory, 158 Wn.2d 759, 829-30, 147 P.3d 1201 (2006)).

Cooper[28] and Division Two in Ma'ele[29] have recognized that a trial court retains broad discretion to admit or exclude expert biomechanical testimony. As we stated in Stedman, "The broad standard of abuse of discretion means that courts can reasonably reach different conclusions about whether, and to what extent, an expert's testimony will be helpful to the jury in a particular case."[30] The trial court was well within its discretion to allow Probst to testify about the forces involved in the accident, as well as about his calculation of those forces.

   b. Injury Mechanism/Waiver

While Probst's calculations of forces involved in the accident did not implicate Frye, Appellants contend that Probst's use of those calculations to determine the existence of an injury threshold did implicate Frye. Probst stated in his expert report that the forces at play in this particular accident could not have caused their injuries.

We decline to conduct a Frye analysis on the injury threshold testimony. Appellants waived this issue at trial by reaching an agreement with opposing counsel about the scope of Probst's testimony. Ordinarily, where the trial court has made a definite, final pretrial ruling on the record, a party is entitled to rely on that ruling without renewing the objection during trial.[31] That rule does not apply here. Plaintiffs objected during Probst's direct examination that he was crossing the line into medical causation testimony. The trial court required counsel to provide briefing or reach an agreement.

---

[28] 172 Wn. App. 9, 18, 292 P.3d 764 (2012).

[29] 111 Wn. App. at 564 (holding the court did not abuse its discretion in allowing a biomechanical engineer to testify "about the nature of the forces involved in low speed collisions and the likelihood of injury from such forces").

[30] Stedman, 172 Wn. App. at 18.

[31] State v. Koloske, 100 Wn.2d 889, 896, 676 P.2d 456 (1984).

Counsel then represented to the court they had reached an agreement. Probst's testimony after the agreement did not address whether Plaintiffs were injured in the accident. Probst offered the narrow conclusion that "you have very limited force applied to the body in an event like this."[32] Plaintiffs made no objection. Nor did Plaintiffs object to any other of Probst's testimony following the agreement. Once counsel raised an objection to Probst giving medical causation testimony and then advised the court they had reached an agreement resolving that objection, Plaintiffs waived any further objection to Probst's injury mechanism testimony.[33]

### Motion for New Trial

Appellants also contend the trial court erred by denying their motion for a new trial, or in the alternative, for additur.[34] [35] Appellants contend that the trial court abused its discretion by not granting their motion for a new trial based on CR 59(a)(5), (7) and (9). A verdict may be vacated and a new trial granted if the damages are so inadequate

---

[32] RP (Dec. 13, 2011) at 119.

[33] The waiver covers all of Appellants' challenges to Probst's alleged causation testimony, including challenges based on Frye, ER 702, ER 401, ER 402 and ER 403.

[34] The parties did not brief the issue of additur on appeal.

[35] Appellants also contend the trial court erred in denying their motion for judgment as a matter of law on special damages, and more specifically, the reasonableness and necessity of Appellants' medical bills. We decline to consider the alleged error because we address the evidence of special damages in the context of our analysis of the motion for new trial. See Adams v. Peterman Mfg. Co., 47 Wash. 484, 486, 92 P. 339 (1907) ("the same question is presented by the motion to direct a verdict and for judgment notwithstanding the verdict"); 15A Karl B. Tegland & Douglas J. Ende, WASHINGTON PRACTICE: WASHINGTON HANDBOOK ON CIVIL PROCEDURE, § 68.15 (2012-2013 ed.) (a renewal of the motion for judgment as a matter of law after trial pursuant to CR 50(2)(b) "presents the same question of law" as a motion for judgment as a matter of law, "and permits the court to consider the evidence more carefully and with adequate time to study it, an opportunity the court may not have had under the pressure of the trial").

11

as unmistakably to indicate that the verdict must have been the result of passion or prejudice,[36] that there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law,[37] or substantial justice has not been done.[38] We review a trial court's decision on a motion for a new trial for abuse of discretion.[39]

Determination of the amount of damages is within the province of the jury, and courts are reluctant to interfere with a jury's damage award when fairly made.[40] Where, as here, an appellant argues the verdict was not based upon the evidence, we look to the record to determine whether there was sufficient evidence to support the verdict.[41] If sufficient evidence exists to support the verdict, it is an abuse of discretion to grant a new trial.[42] However, a court abuses its discretion by denying a motion for a new trial where the verdict is contrary to the evidence.[43]

a. Special Damages

Appellants contend the special damages award was not supported by the evidence and was contrary to law under CR 59(a)(7).

---

[36] CR 59(a)(5).

[37] CR 59(a)(7).

[38] CR 59(a)(9).

[39] Palmer v. Jensen, 132 Wn.2d 193, 197, 937 P.2d 597 (1997).

[40] Fisons Corp., 122 Wn.2d at 329.

[41] Palmer, 132 Wn.2d at 197.

[42] Id. at 198.

[43] Id.

The causal relationship of an accident or injury to a resulting physical condition must be established by medical testimony beyond speculation and conjecture.[44] Expert medical testimony is necessary to establish causation where the nature of the injury involves "obscure medical factors which are beyond an ordinary lay person's knowledge, necessitating speculation in making a finding."[45] If causation is established, plaintiffs in negligence cases are permitted to recover the reasonable value of the medical services they receive, although not necessarily the total of all bills paid.[46] The question is whether the sums requested for medical services are reasonable.[47]

Plaintiffs presented the testimony of Dr. Romero to prove causation. Burdick did not present her own medical causation expert, and Probst did not testify that this particular accident caused these particular injuries. Plaintiffs also relied on Dr. Romero's expert testimony to prove that their medical treatment was reasonable and necessary to treat their injuries. Burdick did not present a rebuttal expert to challenge the reasonableness and necessity of Plaintiffs' medical expenses. Nor did

---

[44] Anderson, 172 Wn.2d at 606-07 ("Expert medical testimony must meet the standard of reasonable medical certainty or reasonable medical probability."); Miller v. Staton, 58 Wn.2d 879, 886, 365 P.2d 333 (1961) (determining trial court erred by admitting plaintiff's medical bills for injury that plaintiff's medical expert could not say was probably caused by defendant's negligence).

[45] Riggins v. Bechtel Power Corp., 44 Wn. App. 244, 254, 722 P.2d 819 (1986); see also Doherty v. Municipality of Metropolitan Seattle, 83 Wn. App. 464, 468-69, 921 P.2d 1098 (1996) (trial court's decision to strike plaintiff's biomechanical engineering expert upheld because plaintiff had not demonstrated that expert's background in engineering qualified her to give an opinion in the anatomical, physiological, or medical sciences).

[46] Patterson v. Horton, 84 Wn. App. 531, 543, 929 P.2d 1125 (1997).

[47] Id.

Burdick cross-examine Dr. Romero on whether Plaintiffs' medical bills were reasonable and necessary.

Where causation is established and the medical special damages are undisputed, and the jury declines to award the undisputed amount, a new trial should be granted.[48] Appellants contend Hills v. King,[49] and Ide v. Stoltenow[50] are analogous to their case. In Hills, the defendant presented no medical testimony challenging the necessity or reasonableness of the plaintiff's treatment for injuries to her back and neck caused by a minor car accident.[51] The defendant argued the plaintiff had little need for most of the special damages incurred, as the injuries were mostly in her imagination.[52] The court noted the uncontroverted medical testimony that the medical expenses were reasonable and necessary, and that those expenses resulted from the accident.[53] The jury, however, awarded $200 less than the undisputed special damages.[54] The court affirmed the trial court's grant of a new trial, in part because the jury "reduced the plaintiff's proven special damages."[55] The court noted that "'in determining whether a new trial should be granted because of inadequate damages, the trial court and this

---

[48] Krivanek v. Fibreboard Corp., 72 Wn. App. 632, 636, 865 P.2d 527 (1993).

[49] 66 Wn.2d 738, 404 P.2d 997 (1965).

[50] 47 Wn.2d 847, 851, 289 P.2d 1007 (1955).

[51] Hills, 66 Wn.2d. at 741.

[52] Id. at 739.

[53] Id. at 741.

[54] Id. at 739, 741.

[55] Id. at 739.

court are entitled to accept as established those items of damage which are conceded, undisputed, and beyond legitimate controversy.'"[56]

Burdick contends she sufficiently challenged causation, providing a basis on which the jury could reduce the requested special damages. Burdick further argues that even though she did not present rebuttal medical causation testimony, the jury still had a role in determining the weight and credibility of Dr. Romero's expert testimony. Burdick relies chiefly on Bliss v. Coleman[57] for the proposition that the jury has the right to determine whether a plaintiff incurred unnecessary medical expenses. There, a husband and wife were injured in a car accident and sued the other driver.[58] The jury awarded special damages to the husband but not to the wife, and the trial court granted the plaintiffs' motion for a new trial. The appellate court reversed because the wife's medical expenses were not connected to the accident by any medical testimony.[59] Bliss is readily distinguishable from this case, as the jury's refusal to award damages to the wife was based on her failure to provide expert testimony on causation.[60]

---

[56] Id. at 741 (quoting Ide, 47 Wn.2d at 851); see also Ide, 47 Wn.2d at 849-51 (upholding trial court's grant of a new trial where the jury did not award the full amount of the lowest computation of special damages); Krivanek, 72 Wn. App. at 636 ("Where special damages are undisputed, and the injury and its cause are clear, the court has little hesitancy in granting a new trial when the jury does not award these amounts.").

[57] 11 Wn. App. 226, 227-29, 522 P.2d 509 (1974).

[58] Id. at 227.

[59] Id. at 229.

[60] Id. The other cases Burdick cites involved considerable competing evidence over causation. See Robinson v. Safeway Stores, Inc., 113 Wn.2d 154, 776 P.2d 676 (1989) (no new trial where defendant presented expert testimony that plaintiff's injuries were not caused by defendant's negligence); Cox v. Charles Wright Academy, Inc., 70 Wn.2d 173, 422 P.2d 515 (1967) (no new trial where causation element highly disputed because plaintiff had been in numerous collisions in the few years leading up to the disputed accident); Geston v. Scott, 116 Wn. App. 616, 67 P.3d 496 (2003) (no new trial

Further, our Supreme Court has rejected the argument that, absent evidentiary dispute, the jury is free to conclude medical treatment was unnecessary:

> "The difficulty with that argument is that, carried to its logical conclusion, there never could be an inadequate verdict, because the conclusive answer would always be that the jury did not have to believe the witnesses who testified as to damages, even though there was no contradiction or dispute."[61]

There was no basis for the jury to reject the special damages here. Dr. Romero's undisputed expert testimony was that the collision caused the injuries, and that the cost of medical care was reasonable and necessary. Burdick, on the other hand, did not retain a medical expert to contest medical causation. Burdick did not present evidence of preexisting conditions or injuries that may have called into question whether Plaintiffs' injuries resulted from this collision. Nor did Burdick cross-examine Dr. Romero on the specific issue of the reasonableness and necessity of the special damages.

Instead, Burdick relies upon Probst's general "causation" testimony as support for the jury's reduction of special damages. But contrary to his written report, Probst's trial testimony did not address whether these particular injuries were caused by this particular accident. In fact, counsel agreed that Probst was not qualified to give medical causation testimony, and he offered no such testimony. Probst offered only the more remote and general conclusion that there is "very limited force applied to the body in an event like this."[62] Burdick offers no authority that Probst's narrow opinion of slight forces

---

because causation was disputed because of preexisting low back pain and prior similar injuries); Singleton v. Jimmerson, 12 Wn. App. 203, 529 P.2d 17 (1974) (no new trial warranted, because plaintiff had prior injuries she failed to disclose, leading jury to question reliability of plaintiff's medical expert's testimony).

[61] Palmer, 132 Wn.2d at 200 (quoting Ide, 47 Wn.2d at 851).

[62] RP (Dec. 13, 2011) at 119.

on a body in such a collision is a permissible basis on which a jury could reduce undisputed medical special damages.

The trial court abused its discretion in denying the motion for a new trial on special damages.[63]

### b. Noneconomic Damages

Appellants further contend the jury's failure to award them noneconomic damages was contrary to the evidence in the record under CR 59(a)(7), and prevented them from obtaining substantial justice under CR 59(a)(9). There is no per se rule that general damages must be awarded to a plaintiff who sustains an injury, "although a plaintiff who substantiates [his] pain and suffering with evidence is entitled to general damages."[64] The propriety of the jury's refusal to award noneconomic damages turns on the evidence.[65]

Appellants rely chiefly on Cleva v. Jackson,[66] where the court affirmed the grant of a new trial because the jury had returned only a nominal amount for pain and suffering. But Appellants' reliance on Cleva is misplaced because the evidence in the record demonstrated that plaintiff, at the time of trial, was still injured and required further treatment.[67] Here, Plaintiffs' injuries all resolved within a few months of treatment, and no further care was prescribed.

---

[63] See Palmer, 132 Wn.2d at 198.

[64] Id. at 201.

[65] Id. at 201-02.

[66] 74 Wn.2d 462, 445 P.2d 322 (1968).

[67] Id. at 464.

Burdick responds that the jury's refusal to award noneconomic damages was within the range of evidence because Plaintiffs did not seek immediate medical care, waited five weeks to seek any medical attention, and sought medical care after meeting with a lawyer, who referred them to Dr. Romero.

The parties presented conflicting testimony on the issue of pain and suffering, unlike the undisputed evidence regarding special damages. The jury could have determined that the five-week wait before seeking medical attention undercut any general damages award. The trial court did not abuse its discretion in refusing to grant a new trial on the adequacy of noneconomic damages.

We remand to allow the trial court to exercise its discretion to choose between additur or a new trial on special damages.[68]

WE CONCUR:

_____
Spearman, A.C.J.

_____
Cox, J.

---

[68] Appellants request attorney fees under MAR 7.3, which provides, "The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo." Appellants are entitled to attorney fees if, after either additur or a new trial on special damages, Burdick does not improve her position.