[No. 995-3. Division Three. December 9, 1974.]

JACQUELINE RAE SINGLETON, *Appellant,* v. L. E. JIMMERSON, *Respondent.*

*Charles T. Morbeck,* for appellant.

*Don W. Schussler* (of *Nashem, Prediletto, Brooks & Schussler*), for respondent.

GREEN, C.J.—Plaintiff brought this action to recover for personal injuries sustained in an auto collision. Summary judgment was entered against the defendant on the issue of liability and jury trial was limited to the question of damages. A verdict was returned for $74.25, the exact amount of the special damages. Claiming this award was inadequate as a matter of law, plaintiff moved for a new trial. From a denial of that motion, plaintiff appeals.

On November 10, 1972, plaintiff was seated in the back seat of an automobile that was struck from behind by the defendant. Upon impact the front seat detached and struck plaintiff on the knee and head. She was taken to the hospital, examined by a nurse and released within 2 hours. Plaintiff testified that 1 week after the accident she began to experience pain in her neck and back. She had some diathermy treatments on her back and described her condition at the time of trial in September 1973:

Well, the pain that was in my back has eased up a lot except when I go to tend to my 3-year-old daughter or

pick up some heavy thing or do heavy work, I begin to feel it again. . . . My neck is alright. I don't feel any pain there.

On cross-examination, plaintiff testified that in the summer of 1972, prior to the accident, she went to see a Dr. Pettee: "I was having pain in my lower back. . . . He didn't give me any treatment. He just took x-rays." She went to Dr. Pettee after minor pains in her lower back started getting worse. She did not go to him after the accident and he did not testify at the trial.

Plaintiff's expert witness, Dr. Lahiri, a neurologist, testified that in December 1972, a Dr. Campbell sent plaintiff to him for an electroencephalogram because she was having severe pains in the back of her head. The record does not indicate the result of this test, nor did Dr. Campbell testify. It was not until September 4, 1973, in preparation for trial, that Dr. Lahiri examined her. At that time, plaintiff told Dr. Lahiri that following the accident she experienced pain in the low back and in the neck and that the neck pains had subsided but the pains in her low back had not. She stated that in 1966 she was in an accident and had headaches for about 1 month thereafter. His examination was essentially negative, except for tenderness in the low back which he described as a "mild, chronic low back strain that is likely to be permanent." Dr. Lahiri testified that his finding was subjective, rather than objective.

Defendant's expert witness, Dr. Irwin, an orthopedist, testified by deposition that he examined plaintiff on June 27, 1973. His findings were essentially the same as Dr. Lahiri's, except that he believed her low back symptoms would probably disappear within 6 months. At the time of his examination, plaintiff was complaining of chest pains; however, his examination revealed no problems and he attributed those pains to "hyperventilation syndrome," a condition resulting from nervousness.

During the examination of each of the doctors, defense counsel inquired as to their knowledge of plaintiff's prior

low back condition and her visit to Dr. Pettee. Dr. Lahiri was questioned as follows:

Q Dr. Lahiri, did Mrs. Singleton tell you that in the summer of 1972 six or seven months before this accident, she had been under the care of Dr. Richard Pettee? Did you know that?
A No, she did not tell me that.
Q And if that were the case, would that make it somewhat more difficult to relate the problems she now has to the accident?
A Yes.

Similarly, Dr. Irwin was questioned as follows:

Q And is your opinion, Doctor, that the discomfort resulted from the accident based in part on the fact that she told you she had no prior back or low back problems?
A Yes it was.

It is important to note that neither medical witness expressed an opinion concerning her prior back condition, nor the extent to which it may have been aggravated, if at all, by the accident on November 10, 1972. In fact, Dr. Lahiri's diagnosis was never expressly related to the accident, although it is reasonable to assume that it is related. After considering all the testimony, the jury returned a verdict for the undisputed amount of the special damages, $74.25.

Plaintiff contends that the trial court erred in refusing to grant a new trial on the ground that the jury failed to make any award for pain and suffering and, therefore, the verdict was so inadequate as to indicate that it was the result of passion and prejudice. We disagree.

 In cases where the jury verdict approximates the amount of undisputed special damages and the injury and its cause is clear, the court has little hesitancy in granting a new trial. *Cleva v. Jackson,* 74 Wn.2d 462, 445 P.2d 322 (1968); *Hills v. King,* 66 Wn.2d 738, 404 P.2d 997 (1965); *Shaw v. Browning,* 59 Wn.2d 133, 367 P.2d 17 (1961); *Ide v. Stoltenow,* 47 Wn.2d 847, 289 P.2d 1007 (1955); *Daigle v. Rudebeck,* 154 Wash. 536, 282 P. 827 (1929). However,

where the amount of special damages is disputed and the injury and its cause uncertain, the court has been reluctant to disturb the finding of a jury. *Cox v. Charles Wright Academy*, 70 Wn.2d 173, 176, 422 P.2d 515 (1967); *Richards v. Sicks' Rainier Brewing Co.*, 64 Wn.2d 357, 358, 391 P.2d 960, 2 A.L.R.3d 430 (1964).

In *Cox v. Charles Wright Academy, supra*, the jury verdict was in the approximate amount of the special damages, but a grant of plaintiff's motion for new trial was reversed on appeal. It appeared that the plaintiff had been involved in four prior accidents making it difficult, if not impossible, for the jury to ascertain whether the current accident was a cause of his present difficulty. The court stated, at page 176:

> Except in cases which fall peculiarly within equitable jurisdiction, or where remedies and defenses are made available by statute without a jury, the right of trial by jury shall be inviolate. Const. art. 1, § 21. Accordingly, the law gives a strong presumption of adequacy to the verdict. . . . Regardless of the court's assessment of the damages, it may not, after a fair trial, substitute its conclusions for that of the jury on the amount of damages. . . . When the evidence concerning injuries is conflicting, the jury decides whether the injuries are insignificant, minor, moderate, or serious, and it determines the amount of damages. Aside from the requirement that there be substantial evidence to support the verdict, the jury is the final arbiter of the effect of the evidence, for it determines the credibility of the witnesses, the weight of their testimony, and the consequence of all other evidence.

In *Richards v. Sicks' Rainier Brewing Co., supra*, the court affirmed the denial of motion for a new trial where the verdict approximated the amount of claimed special damages, stating at page 358:

> In order to set aside the verdict and judgment in this case, we must be able to say the verdict was so inadequate as unmistakably to indicate it was the result of passion and prejudice. . . . If there is substantial

evidence to support the verdict, it must stand. . . .
. . .

It was within the province of the jury to weigh all of the testimony and to give to it the weight which the jury believed it was entitled. The jury had a right to disbelieve the testimony most favorable to the plaintiff, and could have concluded that the medical expenses for repair of the hernias did not result from the accident. The $1,800 award would then have included general damages which, under this record, we cannot say were so inadequate as unmistakably to indicate passion or prejudice.

As in *Cox* and *Richards*, the evidence herein disclosed that plaintiff had a prior low back problem. A low back problem persisted to the time of trial, making it impossible for the jury to determine whether the present difficulty was the result of the prior condition or a result of the accident. The medical testimony is of no help in this regard, as plaintiff did not tell either of the two physicians that she had a prior low back condition. Each testified that his opinion was premised on the fact that plaintiff did not have any prior low back problem. The failure to reveal the existence of her prior condition could have materially affected the jury's appraisal of plaintiff's credibility as to the other claimed injuries that were totally subjective in nature. The jury could have disbelieved plaintiff's testimony as to the injuries sustained to her cervical area and consequent headaches and found that her present low back problem was attributable to her prior condition and thus determined to award nothing for pain and suffering. *See Bliss v. Coleman*, 11 Wn. App. 226, 522 P.2d 509 (1974). As the issue of liability was not before the jury, the award of special damages could have been made solely because the accident caused plaintiff to incur certain expenses to find out whether or not she was in fact injured.

In any case, the jury could have reached its verdict, reasoning that only $47.25 of the damages were attributable to the accident and the two diathermy treatments in the amount of $30 were attributable to plaintiff's prior condi-

tion. In that event the jury, concluding that her injuries were nominal, could have included in the $74.25 verdict the sum of $30 as a nominal award for pain and suffering. *See* *Richards v. Sicks' Rainier Brewing Co., supra.*

In view of the uncertainty surrounding the precise cause of plaintiff's present low back condition, her questionable credibility and the subjective nature of her injuries, we are unable to conclude that the verdict was so inadequate that this court should hold that the trial judge who heard and saw the witnesses and denied the motion for new trial should be reversed.

Judgment affirmed, with each party to bear his own costs.

MUNSON and McINTURFF, JJ., concur.