[No. 29484-9-I.    Division One.    December 13, 1993.]

CAROL J. KRIVANEK, *as Personal Representative, Appellant,*
v. FIBREBOARD CORPORATION, ET AL, *Defendants,*
OWENS-CORNING FIBERGLAS,
INC., *Respondent.*

*Richard J. Hilfer* and *Castle, Schnautz & Hilfer, P.S.; Mark S. Leemon* and *Fury Bailey,* for appellant.

*Ronald C. Gardner, Steven G. Wraith,* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* for respondent.

WEBSTER, C.J. — Carol Krivanek appeals a judgment for damages. She claims that based on the evidence presented at trial, the jury's damage award was inadequate, and the trial court abused its discretion in denying her motion for a new trial. Owens-Corning Fiberglas (OCF) assigns error to the court's failure to give OCF's proposed instructions to the jury that it could consider the asbestos industry's customs and technological feasibility evidence.

## FACTS

Ben Krivanek began working at the Puget Sound Naval Shipyard (PSNS) in March 1953. He married Mrs. Krivanek in 1963; the couple have eight children. In June 1986, Mr. Krivanek retired from PSNS; in August 1987, he went to work for a private firm with contracts at PSNS.

In December 1987, Mr. Krivanek was diagnosed as having malignant mesothelioma, a cancer of the pleura (the lining of the inside of the chest cavity). He was referred to a thoracic surgeon; after consultation, he decided that he should undergo surgical treatment. From February 21 to March 1, 1988, he was hospitalized for an extrapleural pneumonectomy, surgery in which a lung is removed and the diaphragm is rebuilt. Subsequently, he had radiation therapy; he returned to work in mid-April. On June 13, 1988, he was readmitted to the hospital. Doctors found a palpable mass in his paraspinal area which was progressive mesothelioma. On July 10, 1988, while still in the hospital, he died; he was 58 years old.

Prior to his death, Mr. Krivanek had filed suit against several corporations, alleging negligence and product liability. He contended that these corporations had manufactured

the asbestos-containing products to which he was exposed at PSNS. After he died, Mrs. Krivanek, as personal representative of Mr. Krivanek's estate, was substituted as the plaintiff and was permitted to amend the complaint to allege her and the Krivanek children's wrongful death and survival claims.

Prior to trial, Mrs. Krivanek settled with several of the corporations, and the trial proceeded with OCF as the sole defendant. At trial, Mrs. Krivanek and Mr. Krivanek's friend and fellow shipyard worker, Mr. Stremmel, testified that Mr. Krivanek had planned to work until his youngest son, Jason, was out of college. Mr. Krivanek was also a member of the Army Reserve, and Mrs. Krivanek's share of his military pension, as his surviving spouse, was reduced by 60 percent, to $309 per month. She also received a share of Ben Krivanek's civil service retirement pension, which was reduced by approximately 35 percent to $1,165 per month.

Dr. Finch, an economist, testified as to Mrs. Krivanek's and her children's economic losses. Considering Mr. Krivanek's work life expectancy for wages, life expectancy for pensions, personal consumption, and home services, Dr. Finch arrived at a total loss to Mrs. Krivanek of $401,919.[1] For Mr. Krivanek's negligence and product liability claim, Mrs. Krivanek also presented evidence of $16,601 in physician bills, $50,899.74 in hospital bills, and $5,245.43 in funeral costs.

The jury found that OCF was not negligent but that its product was not reasonably safe and that this unsafe condition was a proximate cause of Mr. Krivanek's illness and death. The jury awarded Mr. Krivanek's estate $90,000 on his product liability claims. On their respective wrongful death and survival claims, Mrs. Krivanek was awarded $30,000, and her children together were awarded $30,000.[2] The court

---

[1] Dr. Finch used United States Government tables to get Mr. Krivanek's work life expectancy, age 65, and his life expectancy, 18.99 years.

[2] These amounts were: $2,250 each to Michael Moore, Christie Hartke, Cary L. Krivanek and David M. Krivanek; $3,000 to Joseph C. Krivanek; $4,500 each to Steven R. Krivanek and Timothy P. Krivanek; and $9,000 to Jason E. Krivanek.

offset the $150,000 verdict by the total amount of the settlements paid to Mrs. Krivanek prior to trial, $100,300, awarding a judgment against OCF of $49,700.

## PRODUCT LIABILITY ACT

OCF claims that the court erred in instructing the jury under standards of liability predating the product liability act of 1981. RCW 7.72.030. OCF asserts that when the 1981 act applies, jury instructions on negligence and strict liability must include consideration of state-of-the-art evidence on asbestos (evidence about custom in the industry, and historical, medical, and scientific knowledge about asbestos). *Crittenden v. Fibreboard Corp.*, 58 Wn. App. 649, 656-59, 794 P.2d 554, 803 P.2d 1329 (1990).

■ Where the harm results from exposure, and it appears that substantially all of the injury-producing events occurred prior to the adoption of the 1981 act, the 1981 act does not apply. *Koker v. Armstrong Cork, Inc.*, 60 Wn. App. 466, 472, 804 P.2d 659, *review denied*, 117 Wn.2d 1006 (1991). The jury is not required to consider the asbestos industry's state-of-the-art evidence where a shipyard worker's products liability action against asbestos products manufacturers arose before the 1981 act.

Ben Krivanek was exposed to asbestos in the 1950's and 1960's and was diagnosed in 1987. Medical experts testified that most people with mesothelioma are found to have their first exposure to asbestos 20 or 30 years before diagnosis, clearly placing Ben Krivanek's exposure and inhalation substantially before the act. Because the harm results from continuous exposure, it appears that the injury-producing events occurred before the effective date of the act, July 26, 1981. Thus, because the claim arose prior to the act, the trial court was correct in giving the jury instructions based on pre-act law.

## DAMAGES

Mrs. Krivanek claims that the verdict was outside the range of the evidence, and therefore, the court should have

granted her a new trial. She asserts that the jury awarded a low verdict because it ignored the evidence.[3]

██ ██ Denial of a new trial on grounds of inadequate damages will be reversed where the trial court abuses its discretion. *Wooldridge v. Woolett*, 96 Wn.2d 659, 668, 638 P.2d 566 (1981). A trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based on untenable grounds. *Allard v. First Interstate Bank of Wash., N.A.*, 112 Wn.2d 145, 148, 768 P.2d 998, 773 P.2d 420 (1989). In determining whether a new trial should be granted because of inadequate damages, the trial court and this court are entitled to accept as established those items of damage which are conceded, undisputed, and beyond legitimate controversy. *Hills v. King*, 66 Wn.2d 738, 741, 404 P.2d 997 (1965); *Singleton v. Jimmerson*, 12 Wn. App. 203, 205, 529 P.2d 17 (1974) (citing *King*). Where special damages are undisputed, and the injury and its cause are clear, the court has little hesitancy in granting a new trial when the jury does not award these amounts. *See Jimmerson*. We reverse a jury award of damages which is outside the range of substantial evidence in the record. *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 279-80, 840 P.2d 860 (1992).

██ Dr. Finch testified to economic losses of $401,919 that Mrs. Krivanek would suffer as a result of Mr. Krivanek's death. Mrs. Krivanek's award, $30,000, was less than the

[3]OCF also claimed that it was error for the court not to conduct a reasonableness hearing. Where the plaintiff has settled with some defendants and not others "[a] hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence." RCW 4.22.060(1). Here, the amount of the unsettled claim exceeded the judgment against OCF. Ten of eleven defendants settled with Mrs. Krivanek. One of them, Fibreboard, had not paid its $65,000 settlement at the time of the judgment, November 26, 1991. The court reduced the $150,000 verdict by the amounts actually paid by the settling defendants, $100,300, but did not reduce the verdict by the Fibreboard settlement because Fibreboard had not yet paid, and ordered OCF to pay the remaining portion of the verdict, $49,700. The court also ordered that OCF be reimbursed to the extent Fibreboard paid. Essentially, if Fibreboard paid $49,700, OCF would receive that amount. Thus, a reasonableness hearing was not necessary because the judgment against OCF was less than the Fibreboard settlement. On September 29, 1992, Fibreboard paid $26,000 of its settlement.

lost value of the pensions alone. While the jury was not bound by Dr. Finch's expert testimony, it was bound by the unrebutted, uncontradicted evidence which formed the basis for those opinions and calculations, the evidence of the lost pensions and wages. We find that the trial court abused its discretion in unreasonably finding the damage award to be within the range of the evidence.

The uncontroverted evidence was that Ben Krivanek would have received $133,039 from the civil service pension (after subtracting 65 percent that Mrs. Krivanek continues to receive), and $82,130 from the military pension (after subtracting 40 percent that Mrs. Krivanek continues to receive). These pension losses alone amount to $215,169. If this figure were reduced by a 25 percent personal consumption factor, to $161,376, it would still be five times more than the jury award to Mrs. Krivanek.

As for Ben Krivanek's wages, Ben was employed when he became ill. Up to the time of trial alone, his lost wages totaled $90,563. Even completely eliminating any future wages ($125,778, from trial to his work life expectancy), the value of Ben's home services ($41,665, from his death to his life expectancy), and Ben's personal consumption ($71,256 from his death to his life expectancy, at a rate of $287 per month), the jury's award nowhere nearly approximates these uncontroverted pension and wage losses of approximately $251,939 to $305,732.[4] Thus, the jury's $30,000 verdict was not within the range of the evidence.

We affirm the finding of liability under the product liability act, and the determination of damages on Mr. Krivanek and his children's claims. We remand for a retrial on Mrs. Krivanek's damages only.

PEKELIS and KENNEDY, JJ., concur.

Review denied at 124 Wn.2d 1005 (1994).

---

[4]The $251,939 figure represents wages lost up to trial, $90,563, plus lost pensions reduced by a 25 percent personal consumption factor, $161,376. The $305,732 figure represents the same losses without a deduction from pension losses for personal consumption.