10 P.3d 1076 (2000)
103 Wash.App. 146
James N. KADMIRI, Appellant,
v.
Darlene L. CLAASSEN and John Doe Claassen, individually and the marital community composed thereof, Respondents.
No. 17955-9-III.
Court of Appeals of Washington, Division 3, Panel Nine.
August 15, 2000.
Publication Ordered October 19, 2000.
Kenneth K. Watts, Spokane, for Appellant.
Timothy P. Cronin, Mullin, Cronin, Casey & Blair, Spokane, for Respondents.
KURTZ, C.J.
Darlene L. Claassen struck the car in front of her causing that vehicle to rear-end James N. Kadmiri's car. Ms. Claassen disputed Mr. Kadmiri's damages, but stipulated to liability. At trial, three physicians who examined Mr. Kadmiri testified that his alleged injuries were not causally related to the collision. Mr. Kadmiri presented medical bills in the amount of $8,503.42. The jury awarded him $2,500. The trial court denied his motion for a new trial. He appeals. Based on the evidence, the jury was free to conclude that not all of Mr. Kadmiri's medical expenses were reasonable or necessary. Therefore, we affirm the order of the superior court denying his motion for a new trial.

FACTS
Darlene Claassen rear-ended the car in front of her causing that vehicle to rear-end James N. Kadmiri's car in July 1993. Ms. Claassen admitted fault, but disputed Mr. Kadmiri's damages. Specifically, Ms. Claassen *1077 contested the necessity of the medical treatment, as well as whether the injuries were causally related to the collision.
At trial, photographs of the vehicles showed slight damage to the respective cars. Ms. Claassen testified that at the scene, Mr. Kadmiri got out of his vehicle soon after the impact, was walking around and seemed normal.
Mr. Kadmiri first visited Dr. James Gaddy six days after the collision on August 3, 1993. An x-ray of his back indicated no fractures, but indicated a mild narrowing of the disc space, which was consistent with his age of 41. Mr. Kadmiri was not placed on any work restrictions, and he continued to work. However, a few weeks later, he told Dr. Gaddy that he was unable to work at his job at U.S. West due to low back pain.
Mr. Kadmiri was suspended and eventually terminated from work for wiretapping his ex-wife's phone and stealing company equipment. However, Mr. Kadmiri did not inform Dr. Gaddy that he was unemployed for reasons unrelated to his injuries. In fact, the evidence revealed that Mr. Kadmiri called Dr. Gaddy shortly after he was fired and asked the doctor to write a disability letter to Safeco Insurance Company stating that he could not work at his usual job because of his injuries. He sought work time loss compensation. Dr. Gaddy complied and wrote the letter.
Prior to trial, the court granted Mr. Kadmiri's request that the jury not be told of the reason Mr. Kadmiri had been terminated. However, on the stand Mr. Kadmiri testified he was terminated because his employer was downsizing. Previously, at his deposition, Mr. Kadmiri had testified that he was terminated because of his injuries. After a hearing outside the presence of the jury, the court ruled Mr. Kadmiri could correct his testimony, or he could be cross-examined about the real reasons for his termination. The following day, Mr. Kadmiri told the jury that he was terminated for reasons unrelated to downsizing.
Mr. Kadmiri also testified that prior to the collision his normal weight was approximately 170 pounds, but it had increased after he was injured to 198 pounds. He blamed his weight gain on his inactivity due to his injuries. However, the jury learned that six days after the collision, Dr. Gaddy's records revealed Mr. Kadmiri's weight was 218 pounds.
To support his claim for special damages, Mr. Kadmiri offered a five-page summary listing his medical expenses totaling $8,503.42. The parties stipulated that the charges were accurate for the services rendered.
Three doctors testified via videotape: Dr. Barbara Jessen, neurologist; Dr. Stephen Sears, orthopedic surgeon; and Dr. Scott Linder, orthopedic surgeon. All examined Mr. Kadmiri at the request of U.S. West.
Dr. Linder examined Mr. Kadmiri in April 1994. He stated that with reasonable medical certainty, Mr. Kadmiri's abnormalities existed prior to the collision at issue. Dr. Linder recommended that no further formal treatment was necessary.
Dr. Jessen examined Mr. Kadmiri in September 1994. Dr. Jessen testified that Mr. Kadmiri had a degenerative disease of his spine as a result of aging, and that condition was not attributable to the collision. Additionally, Dr. Jessen said that further medical treatment was not curative, necessary or reasonable.
Dr. Sears examined Mr. Kadmiri in January 1996. Dr. Sears testified that he was skeptical that Mr. Kadmiri had sustained any injury, in light of the minor damage resulting from the accident. Dr. Sears also said that Mr. Kadmiri exhibited rather impressive evidence of elaboration of symptomatology. He opined that Mr. Kadmiri's condition was likely fixed and stable before April 1994. Finally, Dr. Sears stated that "it's completely possible that he may be exaggerating so much that there is nothing here wrong at all."
In closing argument, Mr. Kadmiri did not request a specific amount of damages. Ms. Claassen suggested that a reasonable award would include the medical bills for the first few weeks after the collision of $1,075 and another $1,000 for general damages. The *1078 jury returned a verdict awarding Mr. Kadmiri $2,500.
Mr. Kadmiri filed a motion for a new trial pursuant to CR 59(a)(5) and (7). The court denied the motion. He appeals.

ANALYSIS
Mr. Kadmiri contends that the court erred by failing to grant him a new trial under CR 59(a)(5) and (7) because the jury verdict was substantially below the uncontroverted evidence that established the cost of his medical expenses related to the collision.
CR 59(a)(5) provides that a new trial may be granted where the "[d]amages [are] so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice." CR 59(a)(7) allows a new trial where "there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law."
Determination of the amount of damages is within the province of the jury, and courts are reluctant to interfere with a jury's damage award when fairly made. Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 329, 858 P.2d 1054 (1993) (citing Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 268-69, 840 P.2d 860 (1992)). Denial of a new trial on grounds of inadequate damages will be reversed only where the trial court abuses its discretion. Wooldridge v. Woolett, 96 Wash.2d 659, 668, 638 P.2d 566 (1981).
"Where the proponent of a new trial argues the verdict was not based upon the evidence, appellate courts will look to the record to determine whether there was sufficient evidence to support the verdict." Palmer v. Jensen, 132 Wash.2d 193, 197-98, 937 P.2d 597 (1997). A court abuses its discretion by denying a motion for a new trial where the verdict is contrary to the evidence. Krivanek v. Fibreboard Corp., 72 Wash.App. 632, 637, 865 P.2d 527 (1993) (trial court abused its discretion when it denied a new trial on the basis of inadequate damages in wrongful death case because damages were not within the range of substantial evidence); see also Lanegan v. Crauford, 49 Wash.2d 562, 568, 304 P.2d 953 (1956) (new trial ordered on the issue of damages where damage award less than evidence presented and there was no serious controversy respecting special damage amount). "Where special damages are undisputed, and the injury and its cause is clear, the court has little hesitancy in granting a new trial when the jury does not award these amounts." Krivanek, 72 Wash.App. at 636, 865 P.2d 527.
In Palmer, a new trial was granted on appeal because the jury award equaled only the plaintiff's special damages. Palmer, 132 Wash.2d at 201, 937 P.2d 597. The court held that in the absence of a "legitimate controversy regarding special damages," it was clear that the verdict included no compensation for pain and suffering. Id. In that case, the uncontroverted evidence at trial established that all the medical treatment was related to the accident and, therefore, was necessary and reasonable. Id. at 199, 937 P.2d 597. The court noted that "the defense presented no evidence to call the treatment into question." Id.
By contrast, in this case Ms. Claassen presented evidence that Mr. Kadmiri's treatment was not necessary or reasonable. This evidence was presented through the testimony of Dr. Linder, Dr. Jessen and Dr. Sears.
Dr. Linder and Dr. Jessen both testified that Mr. Kadmiri's abnormalities were the result of aging, not the collision. Both doctors also stated that further treatment was not necessary. Dr. Sears testified that Mr. Kadmiri was exaggerating his symptoms, and his condition was likely fixed and stable prior to April 1994. Significantly, he asserted that it is possible that Mr. Kadmiri had no injuries whatsoever, and his symptoms were the result of exaggeration.
The verdict is not contrary to this evidence. While Mr. Kadmiri's treatment occurred prior to the first examination by any of these physicians, they all testified that any injury he presented he suffered from prior to the accident. Additionally, Dr. Sears stated that Mr. Kadmiri may in fact have nothing wrong with him. Given this testimony, the jury was free to conclude that some of Mr. Kadmiri's medical expenses were unnecessary *1079 because they were not attributable to the collision or because he was exaggerating his injuries.
In denying the motion for a new trial, the court pointed out that the jury likely had concerns about Mr. Kadmiri's credibility. Because Mr. Kadmiri's injuries and treatment were contested, the evidence supported the jury's award. As a result, the court's denial of a new trial was not in error.
Affirmed.
SWEENEY, J., and KATO, J., concur.