# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ANGELICA ROBIN LENNING,<br><br>Respondent,<br><br>v.<br><br>MEGHAN LAYNE SEALE and JOHN DOE SEALE, husband and wife and the marital community property comprised thereof,<br><br>Appellants. | No. 83597-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Meghan Seale, who stipulated she was negligent in rear-ending Angelica Lenning in March 2018, appeals an order granting Lenning a new trial after the jury returned a defense verdict. The trial court granted Lenning's CR 59 motion, finding "substantial justice had not been done" for three reasons—the jurors were distracted during the Zoom[1] trial, a speedy defense verdict suggested the jurors acted based on "emotion," rather than "the facts and the law," and Seale's attorney committed "repeated violations" of the court's pretrial evidentiary rulings. We conclude that the record does not support a finding that juror inattentiveness prejudiced Lenning's right to a fair trial or that the verdict was the result of passion or prejudice. We further conclude that the trial court failed to make sufficient findings to support its conclusion that defense counsel committed

---

[1] "Zoom" is a cloud-based, peer-to-peer videoconferencing software platform that is used for teleconferencing, telecommuting, distance education, and social relations.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

misconduct prejudicing Lenning's rights as required by CR 59(f). We therefore reverse the order granting a new trial and affirm the judgment for Seale.

I

Seale and Lenning were in an automobile collision on March 10, 2018, on Aurora Avenue North in Seattle. When Lenning filed suit against Seale, Seale admitted fault, leaving for the jury the amount of damages, if any, that Lenning sustained as a result of the collision. Trial was held over Zoom and lasted four days.

The focus of the evidence was on the nature and extent of Lenning's injuries after the 2018 collision. Lenning testified that the accident caused her to experience such significant and ongoing pain in her neck and shoulders, and severe cramping in her arms, forearms, and hands, that she was unable to continue in her chosen profession as a chef and caterer.

Seale challenged Lenning's testimony that the 2018 collision caused her to be unable to carry on as a chef. On cross-examination, Seale questioned Lenning about a 2017 sworn statement she had filed in a district court case in which a former employee claimed Lenning owed her wages. In that statement, Lenning stated that she had officially closed her catering business on April 30, 2016, some two years before the collision with Seale, and that Lenning was unable to operate the business because of "unexpected major health concerns." Seale sought to impeach Lenning with this prior statement.

Lenning objected, arguing that the health issues referenced in the statement were mental health issues the parties had agreed would be inadmissible at trial

2

and the court had excluded by an order in limine. The court overruled this objection because the letter did not reference mental health issues. The trial court permitted Seale to cross-examine Lenning about the statements concerning closure of the business and her health concerns.[2]

Lenning testified she closed a catering business that she ran as a sole proprietorship due to stress she experienced from the end of a personal relationship. She testified that three weeks later she opened a new catering business as a limited liability company, and this company purchased her sole proprietorship's assets. She claimed she operated this limited liability company continuously until her March 2018 collision.

Lenning called physiatrist Mychael Lagbas, MD, who opined that Lenning suffered from thoracic outlet syndrome (TOS),[3] a cervical and thoracic injury, a disk extrusion at the cervical level, an underlying joint and ligamentous injury, and inflammation in the lumbar spine. Dr. Lagbas attributed all of these injuries to the March 2018 collision. He further opined that some of Lenning's symptoms would be permanent, including the pain in the neck and upper back, numbness and tingling in the upper extremities, and the fatigue that Lenning reported she experienced with upper extremity activity.

---

[2] Lenning did not request an instruction limiting the use of the letter for impeachment purposes only, and the court admitted a redacted version of the statement without limitation.

[3] Dr. Lagbas described TOS as the compression of nerves and/or blood vessels to the arm, an injury that can be caused by rear end collisions.

Lenning also called Theodore Becker, PhD, a human performance and biomechanical specialist. Becker conducted capacity evaluation testing of Lenning and reported that Lenning suffered from destabilized biomechanical disc positioning, resulting in asymmetric strength in her shoulders. He also identified "considerable strength deficits" in her upper extremities. He measured temperatures in her palms that were higher than temperatures in her fingers. Becker testified this "could" be associated with "thoracic outlet condition." Becker testified that while Lenning could reach her arms over her head, such movements would over time worsen the destabilization of her neck. On cross-examination, Becker testified he had not reviewed Lenning's medical records and did not know what her physical capacities were before the March 10, 2018 collision.

Seale called Allen Jackson, MD, an orthopedic surgeon. Dr. Jackson examined Lenning and concluded she does not have TOS. He testified that Lenning's MRIs (magnetic resonance imaging), X-rays, and his neurological examination of her was normal. He found no muscle atrophy, a symptom almost always present if someone suffers from neurogenic TOS. When he conducted a sensory examination of Lenning's fingertips with a pin, she reported diminished perception in all five fingers, symptoms Dr. Jackson testified would be inconsistent with a diagnosis of TOS.

In closing, Lenning sought a general damage award of $8.9 million, arguing that she "can no longer use her arms to cook, can no longer use her arms, period,

to the same extent that she used to."[4]  Lenning acknowledged Seale would ask for

a defense verdict, stating,

> [I]f after all of the evidence that you see, you believe that evidence shows that my client is a liar and a fraud and a fake, if the evidence shows on a more-likely-than-not basis that she is fine and seeking jackpot justice, then come back in here with a verdict for nothing.  If you believe that the evidence shows that she tricked all of the doctors that treated her, all of the doctors that diagnosed her, tricked her daughter, tricked her cousin, tricked her former friend and business partner, and tricked Dr. Becker's objective tests, then tell us that with your verdict.  [Lenning] shouldn't profit if that's what you believe the evidence shows, and I shouldn't benefit from it either.

Lenning's counsel argued if Lenning's evidence were believed, her injuries would

last "forever" and the verdict should reflect that fact.

Seale argued in closing the jury should return a defense verdict because

Lenning had not met her burden of proving the damages she claimed:

> The fact is, even if you believe the plaintiff was injured as a result of the March 10th, 2018 accident, this case isn't even worth five figures.
> . . . .
> . . . . You do, however, have a right and would be well within your right to find that the plaintiff has failed to provide you with credible evidence that her claims are more probably true than not true.  I would submit to you that the plaintiff has failed to prove the claims that they made in this lawsuit.  Therefore, I would ask you to render a verdict in favor of Michael and Meghan Seale.

After the jury returned a defense verdict for Seale, the trial court granted

Lenning's motion for a new trial.  The court found that "[s]ubstantial justice was not

done due to a totality of circumstances including [1] juror distraction, [2] repeated

violations of the order on motions in limine, and [3] a verdict delivered so quickly it

raised the specter of a decision based on emotion, not the facts and the law."

---

[4] Lenning did not seek economic damages.

On appeal, Seale argues the trial court erred in granting Lenning a new trial because the record does not support a finding that the defense verdict was based on passion or prejudice under CR 59(a)(5) or juror inattentiveness under CR 59(a)(1). She also contends the trial court violated CR 59(f) by failing to enter sufficient findings of fact of "repeated violations" of orders in limine by defense counsel and by making no findings that Lenning was prejudiced, as required by CR 59(a)(2). Lenning seeks to defend the order granting a new trial on the ground that misconduct by Seale's trial counsel prejudicially affected the verdict and that the defense verdict was not supported by substantial evidence.

II

The speed with which a jury renders a verdict, alone, does not establish that "substantial justice" has not been done. In Johnson v. Howard, 45 Wn.2d 433, 446-47, 275 P.2d 736 (1954), the court held "the length of time devoted to jury deliberations is not a reliable guide to the measure of justice which has been achieved." In Johnson, the trial lasted four days and the issues were relatively simple. Id. at 446. The jury deliberated 2 hours and 19 minutes. Id. The court determined the jury's returning a verdict in a relatively short time did not show "substantial justice has not been done." Id. There is nothing in this record to suggest that the jury did not fully and impartially consider the evidence Lenning presented or that it did not abide by the court's instruction to "not let [their] emotions overcome [their] rational thought process." The record indicates that the jury began deliberations at 2:00 p.m. on November 8, 2021, and returned its verdict at 3:47 p.m. that same afternoon. Under Johnson, this does not justify a new trial.

6

III

The record does not support the trial court's conclusion that juror distraction affected Lenning's right to a fair trial. Shortly before Dr. Jackson finished testifying, Seale's trial counsel alerted the trial court that they had observed several jurors engaged in other activities during testimony. Seale reported that one juror appeared to be loading a Federal Express box, other jurors appeared to be walking around, some jurors had blurred their Zoom backgrounds and one juror was not visible for a short period of time. Seale asked the court to instruct the jury again to give the parties their undivided attention. Lenning's counsel raised no concerns about jury inattentiveness.

The trial court shared Seale's concerns and when the court brought the jurors back into the virtual courtroom, it informed the jurors that the parties and the court had noticed that certain jurors had been engaged in other activities, speaking to other people, and looking at other things. The trial court reiterated the jurors' obligations to give the parties and the court their undivided attention and to hear all the testimony to come to a fair and just decision. The trial court reminded the jury to put all distractions aside and to use their "best ability" to focus on the trial. There is no further record that any juror did not pay attention to any aspect of the case. No party raised any concerns about juror distractions at any point thereafter. Nor did Lenning move to discharge any juror for inattentiveness.

RCW 2.36.110 requires the trial court to excuse from further jury service any juror, who in the opinion of the court, has manifested unfitness as a juror "by reason of . . . inattention." The determination whether a juror was so inattentive

that the aggrieved party was prejudiced is within the trial court's discretion. State v. Hughes, 106 Wn.2d 176, 204, 721 P.2d 902 (1986). If counsel does not object to a juror's inattentiveness during trial, the error is waived. Id. Here, neither party requested the removal of any juror for inattentiveness and the record does not support that jurors were so inattentive as to justify a new trial.

IV

Lenning contends Seale's trial attorney committed misconduct in opening statement, in cross-examination of Lenning's witnesses, and in closing arguments. She argues these multiple instances of misconduct justified the order granting her a new trial. The trial court did not make any findings describing what conduct constituted "repeated violations" of the court's rulings in limine, and did not make any findings describing how any such violations affected the verdict. In the absence of such findings, the trial court's order granting a new trial is insufficient under CR 59(f) to justify setting aside the verdict.

A trial court may grant a new trial where misconduct of the prevailing party materially affects the substantial rights of the losing party. CR 59(a)(2). A party seeking a new trial based on misconduct must establish (1) the challenged conduct was actually misconduct, (2) the misconduct was prejudicial, (3) the misconduct was objected to at trial or the trial court interjected its disapproval of counsel's behavior, and (4) the misconduct was not cured by the trial court's instructions. Coogan v. Borg-Warner Morse Tec Inc., 197 Wn.2d 790, 806, 490 P.3d 200 (2021); Andren v. Dake, 14 Wn. App. 2d 296, 316, 472 P.3d 1013 (2020) (citing Teter v. Deck, 174 Wn.2d 207, 224-25, 274 P.3d 336 (2012)).

8

"In all cases where the trial court grants a motion for a new trial, it shall, in the order granting the motion, state whether the order is based upon the record or upon facts and circumstances outside the record that cannot be made a part thereof." CR 59(f). If the order is based on the record, the trial court must give definite reasons of law and facts for its order. Id. This rule is "intended to enable meaningful appellate review without resort to speculation as to the reasons for the trial court's order." Andren, 14 Wn. App. 2d at 308. This purpose would be frustrated if the reasons in the order were not stated in sufficient detail to enable review " 'without resort to debatable inference and speculation.' " Dybdahl v. Genesco, Inc., 42 Wn. App. 486, 488, 713 P.2d 113 (1986) (quoting Williams & Mouseth Ins. Brokers, Inc. v. Chapple, 11 Wn. App. 623, 628, 524 P.2d 431 (1974)). If the order fails to comply with CR 59(f), it must be vacated. Stigall v. Courtesy Chevrolet-Pontiac, Inc., 15 Wn. App. 739, 740, 551 P.2d 763 (1976). We review an order granting a new trial for abuse of discretion, and we require " 'a much stronger showing of abuse of discretion to set aside an order granting a new trial than one denying a new trial.' " Andren, 14 Wn. App. 2d at 305 (internal quotation marks omitted) (quoting Teter, 174 Wn.2d at 215). Nevertheless, CR 59(f) "does require a trial court to set forth definite reasons of law and fact to support an order granting a new trial." Id. at 307.

In Andren, we reviewed a trial court order granting a new trial based on "extensive findings" establishing "rampant misconduct" at trial. 14 Wn. App. 2d at 300. Our opinion quoted the trial court's order granting a new trial in full, which spanned more than four pages in the Washington Appellate Reports. Id. at 301-

9

05. The trial court described with specificity and in detail 14 instances of misconduct, explaining why counsel's actions had violated the court's rulings and were prejudicial. Id. We carefully examined the record, holding one of the findings to be unsupported but finding others appropriate. Id. at 309, 311-17. We lack such findings here.

In contrast, Washington decisions have held orders granting new trials inadequate when they have been based on generalizations unsupported by specific findings of misconduct and prejudice. McUne v. Fuqua, 45 Wn.2d 650, 651, 653, 277 P.2d 324 (1954) (order insufficient to allow new trial when stating "substantial justice" had not been done where defense verdict was within range of evidence that plaintiff had only "inconsequential" injury); Dybdhal, 42 Wn. App. at 487-88 (reference to evidentiary rulings insufficient where neither error nor prejudice was identified); Reiboldt v. Bedient, 17 Wn. App. 339, 342, 562 P.2d 991 (1977) (order insufficient in stating, "Although the court is hard put to put any single factor down that would warrant the granting of a new trial, it is the feeling of the court that justice has miscarried and that a new trial should be granted.").

In Lenning's motion for a new trial and on appeal, she identifies six rulings in limine she contended Seale's trial counsel violated, asserting misconduct sufficient to warrant a new trial. In some cases, Lenning relies on statements by defense counsel to which objection was sustained or which were ordered stricken. For instance, Lenning points to a question by Seale's trial counsel about his own asymmetric anatomy, which Lenning objected was a reference to an excluded preexisting condition, which the trial court sustained. In opening and during cross-

examination of Lenning, Seale's trial counsel referenced recommendations by Lenning's treatment providers, to which Lenning's objections were sustained. During closing, Seale's trial counsel referred to Lenning's not having offered into evidence any healthcare records, healthcare bills, tax returns, or business records, as well as her "low medical expenses," to which Lenning objected on the basis of a ruling excluding evidence or witnesses not called or not offered. The trial court sustained Lenning's objections to these statements.

In other cases, Lenning refers to questioning or argument by Seale's trial counsel that the court allowed. In cross-examining Dr. Becker, Seale's trial counsel verified that Dr. Becker did not have knowledge concerning Lenning's physical capacities before the collision. The court overruled Lenning's objection, again based on a pretrial ruling excluding evidence of asymptomatic preexisting conditions.[5] In opening, Seale's trial counsel referred to Lenning's having sought treatment for which she was not referred by another health care provider, to which Lenning objected as violating a ruling excluding the fact her attorney had referred her to Dr. Becker. During testimony, however, the trial court ruled Lenning opened the door to this subject.

During closing, Seale's trial counsel referred to the letter used during cross-examination of Lenning and argued, "The plaintiff has been in pain and had

---

[5] Lenning does not point to a ruling in limine barring inquiry into Lenning's preexisting capabilities, as opposed to asymptomatic conditions. In her own testimony, Lenning implied the collision affected her physical capabilities, testifying she still had neck and shoulder pain "as well as the severe cramping in my forearms and hands," as a result of which "I can't work as a chef in the traditional sense without causing extreme pain," because working as a chef is "just extremely physical."

11

unexpected major health concerns," at which point Lenning's counsel objected. Noting that the letter did not reference Lenning being in pain, the trial court ordered stricken defense counsel's reference to pain but overruled the objection to his reference to the unexpected major health concerns, which was supported by the evidence.

And in other cases, the trial court refused Lenning's request for curative relief at trial, implicitly concluding the alleged related violations were not unduly prejudicial. Before closing, Lenning sought three curative instructions, concerning lack of evidence of a speed limit, lack of a medical referral for health care, and lack of evidence Lenning had sought to evade a wage claim. The trial court denied these instructions. Lenning did not raise any other issues at trial that she contended required curative relief.

Lenning relies on one, clearly disallowed question. Dr. Lagbas testified on cross-examination he reviewed Lenning's June 20, 2018 MRI and May 16, 2021 MRI. After discussing the findings in Lenning's neck and Lenning's not being a surgical candidate, Seale's trial counsel asked, "And you would agree that some of those MRI findings preexisted the March 10th, 2018 accident, correct?" Lenning objected, and the trial court took up the matter outside the presence of the jury. After colloquy, the trial court ruled based on its review of the opinions of Dr. Lagbas and Dr. Jackson that Seale's trial counsel would be permitted to cross-examine Dr. Lagbas on preexisting findings in Lenning's lumbar spine, but not her cervical spine. When testimony resumed, Seale's trial counsel asked Dr. Lagbas several questions about the anatomy of the spine, degenerative changes associated with

aging, and, as the trial court had permitted, Lenning's preexisting lumber MRI findings. Immediately after, Seale's trial counsel asked, "And is that true also of the neck, that the findings that you saw pre-existed?" Dr. Lagbas responded, "Some of the findings, yes." Lenning did not object. Although Lenning appears to place most emphasis on this question on appeal, it did not form part of Lenning's request for curative relief in the trial court.

The reasons stated in the order granting a new trial are not stated in sufficient detail to enable review " 'without resort to debatable inference and speculation.' " Dybdahl, 42 Wn. App. at 488. The statement that Seale's trial counsel committed "repeated violations of the order on motions in limine" is insufficient to disregard the jury's verdict given that Lenning based her claims of misconduct on questions or arguments the trial court allowed, questions or arguments to which Lenning did not object, and questions or arguments to which the trial court either gave a curative instruction or concluded a curative instruction was unwarranted. In the absence of explicit CR 59(f) findings justifying the extraordinary remedy of setting aside a verdict, the law does not permit us to uphold an order doing so.

V

In seeking a new trial in the trial court, Lenning argued "there is no evidence to support the jury's determination that Plaintiff was not injured as a result of the subject collision." CR 59(a)(5) provides that a trial court may order a new trial if the jury awarded "damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice." The

passion or prejudice "must be of such manifest clarity as to make it unmistakable." Bingaman v. Grays Harbor Cmty. Hosp., 103 Wn.2d 831, 836, 699 P.2d 1230 (1985). Lenning's closing argument acknowledged the jury might disbelieve Lenning's claim. The trial court did not rest its order on this ground, and Lenning does not show denying a new trial on this ground was an abuse of discretion.

Additionally, Lenning moved at the close of evidence for judgment as a matter of law, seeking a "directed verdict as to causation as Dr. Lagbas did present testimony on a more-probable-than-not basis that Ms. Lenning's injuries . . . were the result of the March 10th, 2018 collision," arguing there was no evidence to the contrary. The court denied the motion. Lenning renewed the motion after the verdict, seeking a new trial under CR 59 and further arguing there was insufficient evidence to support the jury's verdict. Although the court granted a new trial as discussed above, the court did not grant a new trial on the ground the evidence was insufficient. We review a CR 50 ruling de novo. Paetsch v. Spokane Dermatology Clinic, P.S., 182 Wn.2d 842, 848, 348 P.3d 389 (2015). Judgment as a matter of law is appropriate only when no competent and substantial evidence exists to support a verdict. Id. We construe the evidence and all reasonable inferences in favor of the non-moving party, in this case, Seale. Id.

In opposing judgment as a matter of law, Seale argued Dr. Jackson testified Lenning did not have TOS. Dr. Jackson explained there are five recognized types of TOS, the first four of which require affirmative findings on specific tests to confirm the diagnosis. The fifth, known as "non-specific TOS" or "disputed TOS," involves pain and muscle weakness but is based solely on the patient's subjective

complaints. There is no diagnostic test for this type of TOS. According to Dr. Jackson, "a significant number of medical [experts] doubt the existence of this disputed Thoracic Outlet Syndrome." He cited studies indicating that of patients diagnosed with disputed TOS, somewhere between 64 and 70 percent of them actually have some alternative disorder ultimately diagnosed, and not TOS.

For the remainder of Lenning's claimed injuries, Seale argued Dr. Jackson testified Lenning's pain was "cervical scapular pain syndrome." Dr. Jackson did not testify that such a condition in Lenning was or was not caused by the collision. Dr. Jackson described this terminology as "a better description of her symptoms," meaning "that's the distribution of where her pain is." In addition, Seale argued the totality of the evidence concerning Lenning's "pre-accident activities versus post-accident" activities and evidence of the closure of her business before the collision permitted the jury to conclude Lenning "is not telling the truth to this Court, to her doctors, and to the jury."

Dr. Lagbas testified to several diagnoses beyond TOS, but his testimony supporting causation was very limited. He stated, "I think all of the injuries that I'm going to list out, I believe, on a more-probable-than-not basis were caused by the motor vehicle collision." Later, in reference to a summary of Lenning's treatment, Dr. Lagbas was asked, "From all of the records that you reviewed, were they all related to the motor vehicle collision?" He answered, "Not all of them. There were some records I reviewed that were unrelated. But, again, in my previous forensic reporting and evaluation, I specified which records I thought were related." Dr. Lagbas also reported that Lenning's medical records demonstrated that "the initial

15

documents from Overlake [Hospital] from her initial – right after the initial motor vehicle collision, they mentioned that she was having upper extremity – so left arm numbness and tingling, which is potentially related, but they didn't postulate on diagnoses."[6] Lenning, identifies this as further evidence of causation of some injury, though strictly Dr. Lagbas gave this testimony only in response to the question whether documents from Overlake supported his diagnosis of TOC.

There was no additional evidence of causation. Lenning's other expert, Dr. Becker, was not asked about causation and stated only that he did not have information on Lenning's physical capacities before the collision. Despite listing other injuries he associated with the collision, Dr. Lagbas testified the "primary" injury he diagnosed and associated with the collision was TOS, and there is no dispute Dr. Jackson provided evidence Lenning did not have this diagnosis and further that some experts disputed the diagnosis even existed for Lenning's presentation. Seale elicited on cross-examination from Dr. Lagbas that Lenning had told him "she could no longer cook due to pain symptoms and had to close her catering company." Seale separately introduced evidence that Lenning had closed the business much earlier due to unexpected major health concerns. And contrary to Lenning's argument, there was evidence of Lenning's having other diagnoses supporting pain complaints. Dr. Lagbas testified Lenning's Arizona doctors diagnosed fibromyalgia. He testified there is no known cause for that disease, that women are more likely to develop fibromyalgia than men, and that it can be caused by either a traumatic event or "significant psychological stress." He testified that

---

[6] Lenning did not offer any medical records in evidence.

he had diagnosed Lenning with "something similar," "central pain hypersensitization."

Lenning relies on Ide v. Stoltenow, 47 Wn.2d 847, 289 P.2d 1007 (1955), Palmer v. Jensen, 132 Wn.2d 193, 937 P.2d 597 (1997), and Krivanek v. Fibreboard Corporation, 72 Wn. App. 632, 865 P.2d 527 (1993). In Ide, because of the defendant's negligence, the plaintiff "was trapped in a car which was turned over onto its side and then spun around on the pavement, in consequence of which she suffered a scalp laceration which bled profusely and the closing of which required several stitches," together with bruises, contusions, nervousness, crying in the hospital, shock, and emotional upset. 47 Wn.2d at 850. The jury returned a verdict appearing to award economic damages but allowing very little, if anything, for general damages. Id. at 848-49. Concluding that any general damage award less than $500 would shock the conscience of the court, the court concluded the verdict was not supported by the evidence. Id. at 850-51.

Ide distinguished McUne v. Fuqua, 45 Wn.2d 650, 277 P.2d 324 (1954). 47 Wn.2d at 850-51. McUne held it was an abuse of discretion to allow a new trial after a defense verdict in a damages-only motor vehicle collision trial, because there was "strongly conflicting" evidence on whether the plaintiff had sustained the claimed injuries or had suffered shock and emotional upset as a result of the collision. 45 Wn.2d at 653. This supported the jury in concluding that the plaintiff had experienced no injury that was more than "inconsequential." Id.

In Ide, the defendant attempted to argue based on McUne that the verdict apparently allowing economic damages but no general damages could be

17

explained by the jury disbelieving some of the medical expenses, and so awarding general damages after all. 47 Wn.2d at 851. Rejecting this, the court said, "The difficulty with that argument is that, carried to its logical conclusion, there never could be an inadequate verdict, because the conclusive answer would always be that the jury did not have to believe the witnesses who testified as to damages, even though there was no contradiction or dispute." Id. In Palmer, the court held the verdict was outside the evidence where the jury awarded the exact amount of special damages of $8,414.89 and no general damages, but, as to another plaintiff, supported by the evidence where the jury awarded the special damages of $34.00 and no general damages. 132 Wn.2d at 195-96, 202-03. In Krivanek, the jury awarded the survivors of a worker exposed to asbestos damages for wrongful death and survival. 72 Wn. App. at 634. Despite uncontroverted evidence of at least $161,376.00 in lost pension income, the jury awarded the surviving spouse only $30,000.00. Id. at 636-37. We held, as to the surviving spouse, the verdict was not within the range of the evidence. Id. at 637.

Ide, Palmer, and Krivanek were cases in which the jury found the defendant's conduct caused injury, but failed to award damages for injuries whose existence was beyond dispute—in Ide, the plaintiff's entrapment, fear, and shock, in Palmer, the general damage associated with $8,000.00 worth of necessary medical care, and in Krivanek, compensation for an indisputably lost pension. In this case, unlike Ide, causation of Lenning's claimed injuries was subject to "contradiction or dispute." Ide, 47 Wn.2d at 851. Construing the evidence in favor of Seale, it supported the jury in concluding Lenning did not suffer from the primary

diagnosis Dr. Lagbas asserted, she had other diagnoses that would cause pain, none of which were tied to the collision, she had not been truthful about her condition to Dr. Lagbas, Dr. Becker, or in her testimony, and she had not been truthful about her condition and its effect on her ability to work. Taken together with inferences in favor of Seale, this is sufficient to support a conclusion Lenning did not establish causation of any claimed injury by a preponderance of the evidence. The verdict was within the range supported by the evidence.

We reverse the order granting a new trial and affirm the judgment for Seale. We deny Lenning's request for attorney fees.

_Birk, J._

WE CONCUR:

_Smith, C.J._  _Andrus, J.P.T._